GREEN, Judge.
J.M. was adjudicated delinquent and now appeals his commitment to the custody of the Department of Health and Rehabilitative Services (“HRS”) after HRS recommended that J.M. be placed on community control. We reverse for the reasons which follow.
The State filed a petition for delinquency against J.M. after he was charged with sexual battery upon a minor. J.M. entered an admission to the reduced charge of lewd and lascivious act upon a person under the age of 16 pursuant to section 800.04, Florida Statutes (1993). HRS prepared a predisposition report which recommended that J.M. be placed in a level two moderate community control program. At the disposition hearing, J.M.’s counsel advised the court that he was in agreement with HRS’ recommendation. The State objected to the recommendation but presented no evidence to counter HRS’ predisposition report. The State urged only that J.M. should have no contact with the victim directly or through others.
The trial court adjudicated J.M. delinquent but committed J.M. to the custody of HRS for placement in a level four low risk residential program. The court’s stated reasons for the departure were that (1) it found this offense to be especially heinous and serious; and (2) that the victim had gone through an experience that she would remember for the rest of her life. J.M. argues that because these reasons were not supported by a preponderance of the evidence, he is entitled to a new disposition hearing. We agree.
I.
Prior to reaching the merits of the appeal, we must briefly address the issue of whether a trial court’s departure from the recommendations made by HRS in a delinquency disposition proceeding is appealable.[1] We conclude that the Florida legislature has clearly made appellate review available in the instant case pursuant to subparagraphs 39.052(3)(e)l and 3, Florida Statutes (1993) (as amended by Chapter 93-230, section 8, Laws of Fla., effective May 15, 1993). Sub-paragraph 39.052(3)(e)3 states:
The court shall commit the child to the department at the restrictiveness level identified [by HRS] or may order placement at a different restrictiveness level. The court shall state for the record the reasons which establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department. Any party may appeal the court’s findings resulting in a modified level of restrictiveness pursuant to this subparagraph, (emphasis added)
The dissenting opinion, on the other hand, finds that under paragraph 39.052(3)(k), Florida Statutes (1993), J.M. cannot seek appellate review of the decision to commit him to HRS custody. This section provides that:
It is the intent of the Legislature that the criteria set forth in paragraph (d) are general guidelines to be followed at the discretion of the court and not mandatory requirements of procedure. It is not the intent of the Legislature to provide for the appeal of the disposition made pursuant to this subsection (emphasis added).
We believe that the legislature meant the second sentence of paragraph *892 39.052(3)(k) to refer to the first sentence of the paragraph. That is to say, we believe the legislature did not intend to create an appealable issue out of the fact that the trial court considered only certain of the criteria listed in paragraph (d) and not other listed criteria.
Further, there is a second, more fundamental reason for why this statutory provision cannot be construed to preclude appellate review of a trial court’s departure from the HRS recommendation against the commitment of a child. The commitment of a child to HRS is a deprivation of liberty which triggers significant due process protection under both the federal and Florida constitutions. See § 39.052, Fla. Stat. (1993)(specifi-cally setting forth procedure for juvenile adjudicatory and disposition hearings); accord Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); In re T.A.F., 252 So.2d 255 (Fla. 1st DCA 1971)(while juvenile court proceedings are basically civil in nature, they are analogous in many respects to criminal proceedings; basic requirements of due process must be observed). We simply cannot agree with an interpretation of any statutory language which permits such a fundamental liberty interest to rest solely on the unbridled discretion of the trial judge.
If there were no recourse to appellate review, it could never be ascertained whether proper procedure was followed by the trial court or whether the trial court used impermissible considerations when it departed from HRS’ recommendations and entered a disposition which committed the child to the department. And, if there is no appellate review of the trial court’s disposition of the juvenile, there is no legal recourse, absent further action by the legislature, even were it learned that a trial court was using impermissible considerations in its disposition decisions. Indeed, a situation wherein the trial court used an impermissible reason to ignore a recommendation made by HRS in a disposition hearing of a juvenile recently presented itself to this very court. In A.S. v. State, 667 So.2d 994 (Fla. 3d DCA 1996), this court held that the trial court violated the juvenile’s constitutional rights when it sentenced the child more harshly than HRS’ recommendation because the child exercised his constitutional right to assert his innocence, even after adjudication as a delinquent. If, as a general matter, juveniles have no right to appeal their dispositions under § 39.052(3)(k), then A.S. would have to serve a significantly enhanced sentence as a result of his exercise of a fundamental constitutional right. Such a result, in our view, is unfathomable.
We believe that the legislature’s intent to afford appellate review of a court’s departure from an HRS recommendation is evident by the language in subparagraph 39.052(3)(e)3, which requires the trial court to state its reasons for departure on the record and, further, requires that the reasons for departure be established by a preponderance of the evidence. See § 39.052(3)(e)3. Further, subparagraph 39.052(3)(e)l states that: “If the court determines that the child should be adjudicated as having committed a delinquent act and that he should be committed to the department, such determination shall be in writing or on the record of the hearing.” In addition, “[t]he determination shall include a specific finding for the reasons for the decision to adjudicate and to commit the child.” We think that these requirements serve no purpose except for aiding meaningful appellate review of the disposition.
Finally, it is a firmly established principal of statutory construction that a specific statutory provision is to govern any conflicting general statutory provision. Fletcher v. Fletcher, 573 So.2d 941 (Fla. 1st DCA 1991). Thus, to the extent that paragraph 39.052(3)(k) may arguably be construed as a general provision prohibiting any appellate review of delinquency disposition proceedings, it must yield to paragraph 39.052(3)(e) which expressly authorizes appellate review of a trial court’s departure from recommendations made by HRS.
II.
Returning now to the merits of the instant appeal, we find that the trial court’s stated reasons for its departure from the recommendation made by HRS were not established by a preponderance of the evidence. Strict compliance with the provisions *893 of this subparagraph is mandatory and the failure to comply constitutes reversible error. P.D.W. v. State, 621 So.2d 739 (Fla. 2d DCA 1993); M.H. v. State, 621 So.2d 527 (Fla. 2d DCA 1993).
In this case, the State did not represent to the court that the victim was especially traumatized by this incident, nor did it produce any evidence from the victim, her representative or an expert from which the trial court could reach such a conclusion. In fact, it does not appear from the predisposition report that the victim or anyone with knowledge of the victim’s reaction to the incident was ever interviewed in preparation for the disposition hearing in this ease.[2] Other than stating at the hearing that the State disagreed with the HRS recommendation because the crime was “rather serious”, the State presented no evidence, and made no argument, that the commission of this offense to this particular victim was more egregious than to other similarly situated victims.
It is beyond peradventure that every victim of a crime will be emotionally impacted and will have a lasting impression of the incident. That fact alone, however, is insufficient to support a departure. The role of trial courts is to adjudicate based upon evidence presented. Absent evidence of emotional trauma, we are left only with the bare, unsupported conclusions of the trial court with regard to the crime, and its suppositions about the victim’s reaction to the crime, which we think are insufficient to sustain a departure from HRS’ recommendations. Cf. Hankey v. State, 485 So.2d 827, 828 (Fla.1986)(where the only evidence that the victim suffered emotional trauma came from the blanket assertions of the trial court, it was error to depart from the guidelines).
Finally, we do not believe that this case is moot even though, as the dissent correctly points out, the juvenile has served his residential sentence and has been released by HRS. Depending upon the evidence, if any, presented at the new disposition hearing on remand, the trial court, in its finding of delinquency, may conceivably decide to withhold adjudication, impose a less restrictive sentence and give the juvenile credit for the original sentence served or suspend entry of sentence altogether.[3] As stated by this court in R.A.B. v. State, 399 So.2d 16, (Fla. 3d DCA 1981): “The very fact of adjudication, apart from disposition, has potential collateral effects which are not harmless.” Id. at 18. Indeed, a withhold of adjudication as opposed to an adjudication for this offense would certainly be relevant to future dispositions if this juvenile is ever rearrested or if he decided to enter a profession which required him to disclose any juvenile record. See § 39.045, Fla. Stat. (1993).
For the foregoing reasons, we reverse and remand for a new disposition hearing.
GERSTEN, J., concurs.

. Neither party raised this as an issue on appeal. After the briefs were submitted, the parties were requested by the court sua sponte to address this issue at oral argument.

.The predisposition report stated the facts of the instant offense from a report made by Detective Tom Breedlove of the Monroe County Sheriff's Department. The victim related the information to Detective Breedlove some time on or about January 12, 1994. The predisposition report was prepared April 8, 1994. The disposition hearing was May 2, 1994. The victim was listed as a witness on the State’s pretrial catalogue but she did not testify. It is not clear from the record whether she or anyone from her family was present at the hearing.

. We, of course, express no opinion one way or another as to an appropriate disposition for this cause or whether or not J.M. should be adjudicated. We recognize that the trial court may reimpose the original disposition if appropriate evidence is adduced to support the same.