682 So.2d 1203 (1996)
P.W.G., A Child, Appellant,
v.
STATE of Florida, Appellee.
No. 96-944.
District Court of Appeal of Florida, First District.
November 13, 1996.
*1204 Nancy A. Daniels, Public Defender; P. Douglas Brinkmeyer, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Stephen R. White, Assistant Attorney General, Tallahassee, for Appellee.
WEBSTER, Judge.
Appellant seeks review of an order adjudicating him a delinquent child and committing him to the Department of Juvenile Justice (Department) for placement in a high risk restrictiveness level facility, specifically recommending Manatee Adolescent Treatment Service, a facility specializing in the treatment of adolescent sexual offenders. According to appellant, it was error to recommend that he be placed in such a facility because (1) he was not charged with a sexual offense, and consideration of prior, uncharged, criminal conduct violated his right to substantive due process of law guaranteed by the state and federal constitutions; and (2) the recommendation violates a federal consent decree by which the state agreed to abide regarding placement of adjudicated delinquent children in training schools. The state responds (1) that there is no statutory authorization for this appeal and that, therefore, we lack jurisdiction; and (2) that constitutional considerations are not implicated by the recommended placement, which is consistent with the broad statutory grant of power intended to permit the placement, and the treatment plan, best suited to each child's particular needs. We conclude (1) that we possess jurisdiction to hear this appeal; (2) that the recommended placement does not offend the due process clause of either the state or the federal constitution; and (3) that the trial court's action does not violate either the spirit or the letter of the federal consent decree. Accordingly, we affirm.

I.

Factual and Procedural Background
The state filed a delinquency petition charging that appellant had committed what would be the third-degree felony of making a destructive device if committed by an adult. Appellant pleaded guilty to the petition, and the Department was directed to prepare a predisposition report.
The predisposition report reflects the following about appellant who, at the time of the offense, was 15 years old. Appellant was physically and sexually abused during the first four years of his life, while living with his mother and her various boyfriends. At age four, he was removed from his mother's custody, and began receiving mental health treatment. He had been "hospitalized for assaultive behavior, playing with knives and razor blades." He "ha[d] a history of sexually inappropriate language and actions toward *1205 females." It was reported that, while residing in Ohio, he had sexually molested his three sisters, all of whom are legally blind. It was also reported that he had subsequently sexually abused a cousin. However, no charges were filed. He had recently been charged with sexual battery. However, that charge was eventually dismissed. "He admitted to suicidal thoughts[,] and stated he tried to kill himself 3 to 4 times by cutting his legs with glass." He had been treated for many years, both by medications and by therapy. He had been seeing a psychiatrist for more than ten years.
According to the predisposition report, appellant had previously been on community control because of an aggravated assault. One of the conditions of that supervision was that appellant participate in mental health counseling for sexual offenders. The counselor reported that appellant had not participated in the program, and had been terminated. He described appellant as "a very dangerous sexual predator," and believed that, if given the opportunity, there was a real possibility that appellant would "reoffend." The counselor had recommended that appellant "be placed in an in-patient facility with a juvenile sex offender's component."
The predisposition report concluded that, given appellant's history, he "could benefit from a residential treatment program that focuses on treatment for sexual offenders," such as Manatee Adolescent Treatment Service. Because such treatment was only available in programs classified as high risk restrictiveness level, the recommendation was that appellant be adjudicated a delinquent child and committed to the Department at such a level.
At the disposition hearing, the trial court recited appellant's history as reflected in the predisposition report. It then expressed concern about the recommendation that appellant be committed to a high risk restrictiveness level facility. In particular, it was uncertain about the effect of a consent decree entered in the federal case of Bobby M. v. Martinez, Case No. TCA 83-7003 MMP (N.D.Fla.). Accordingly, it passed the case until the following day, to afford the Department an opportunity to explain the effect of the Bobby M. decision on its ability to recommend a high risk placement.
The following day, without objection, the trial court read into the record a letter from the Department's case commitment manager:
This correspondence is to provide clarification in regard to the recommendation to the court from our Department. It is strongly felt by all parties that [appellant] is in need of long term residential care which will address the need for psychosexual therapy and intervention. The most appropriate placement is the Manatee Adolescent Treatment Service (MATS). This is a high risk placement and the admission criteria is [sic] not related to an offense history. The youth does need to be committed on some type of felony, only because the length of stay will range from 12 to 18 months.
The case counselor then explained that the Manatee program consisted "strictly [of] counseling and the treatment that is needed specifically for sexual offenders." It was not a "training school," as that term is used in the Bobby M. consent decree, and defined by statute.
Appellant's attorney did not object to the accuracy of any of the representations contained in the predisposition report. However, he did object to the recommended placement. He argued, first, that committing appellant at the recommended placement level would violate the Bobby M. consent decree; and, second, that it was impermissible to commit appellant to a program designed for the treatment of adolescent sexual offenders when he had not been charged with, or found to have committed, such an offense. The trial court overruled the objections. With regard to the Bobby M. argument, it said that the consent decree had addressed only the criteria for committing children to training schools, and the Manatee program was not a training school. With regard to the second argument, the trial court said that it was clear, based on appellant's mental health history, that the Manatee program was the most appropriate to address, and to attempt to correct, appellant's sexually aberrant behavior. Accordingly, the trial court accepted the Department's *1206 recommendation; adjudicated appellant a delinquent child; and committed appellant to the custody of the Department, for placement in a high risk restrictiveness level facility, specifically recommending the Manatee Adolescent Treatment Service. This appeal follows.

II.

Appealability
The procedure by which a trial court is to select the appropriate dispositional alternative in delinquency cases is set out in subsection (4) of section 39.052, Florida Statutes (1995). Among other things, that subsection requires that the trial court consider a predisposition report prepared by the Department and, if the trial court concludes that adjudication and commitment of the child to the Department are appropriate, the Department's recommendation as to what it believes to be the most appropriate placement and treatment plan. Subparagraph (e)3 of subsection(4) permits the trial court either to "commit the child to the [D]epartment at the restrictiveness level identified or [to] order placement at a different restrictiveness level." However, if the trial court opts for the latter alternative, it must "state for the record the reasons which establish by a preponderance of the evidence why [it] is disregarding the assessment of the child and the restrictiveness level recommended by the [D]epartment." That subparagraph then expressly provides that a decision by the trial court to disregard the Department's "assessment of the child and the [recommended] restrictiveness level" may be appealed by "[a]ny party."
The second sentence of paragraph (k) of subsection (4) reads, "It is not the intent of the Legislature to provide for the appeal of the disposition made pursuant to this subsection"i.e., subsection (4). Reading that sentence and subparagraph (e)3 together, the state contends that a right of appeal from disposition exists only when the trial court elects not to follow the Department's "assessment of the child and the [recommended] restrictiveness level." Because such is not the case here, the state argues that we lack jurisdiction, and must dismiss the appeal. Appellant responds by reference to section 39.069(1), Florida Statutes (1995), which, he argues, permits an appeal in delinquency cases by a child of any order "affecting" him or her.
The intended meaning of the second sentence of paragraph (4)(k) of section 39.052, and the interplay between it and subparagraph (4)(e)3, are addressed in J.M. v. State, 677 So.2d 890 (Fla. 3d DCA 1996). The state's position here is consistent with that of the dissenting judge, Judge Cope. We find Judge Cope's dissent to be generally well-reasoned. However, we conclude that, because of the nature of the issues raised by appellant, it is unnecessary for us to decide what the legislature intended by the second sentence of paragraph (4)(k).
Although they disagreed about the intended meaning of paragraph (4)(k), the majority and the dissent in J.M. agreed that, notwithstanding the intended meaning, a juvenile is permitted to seek review of "any procedural error, any claim of constitutional error, and any claim that an illegal disposition was imposed." 677 So.2d at 895 (Cope, J., dissenting). We, too, agree. Because the issues raised by appellant fall within such categories, we conclude that we have jurisdiction to resolve them.

III.

The Recommended Placement Does Not Offend Due Process
Analogizing to sentencing in criminal cases, appellant argues that it is constitutionally impermissible for a trial court in a juvenile delinquency proceeding to base its decision regarding disposition upon uncharged criminal activity. See generally State v. Potts, 526 So.2d 63 (Fla.1988), approving, 526 So.2d 104 (Fla. 4th DCA 1987) (consideration of unproven criminal charges at sentencing violates substantive due process); Reese v. State, 639 So.2d 1067, 1068 (Fla. 4th DCA 1994) (consideration of "unsubstantiated allegations of misconduct" at sentencing "violates fundamental due process"); Epprecht v. State, 488 So.2d 129 (Fla. 3d DCA 1986) (consideration at sentencing of prior charges *1207 of which defendant has been acquitted violates due process). However, we believe that appellant's analysis is fatally flawed because delinquency dispositions are not analogous to criminal sentencings.
In support of his analogy, appellant cites In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), for the proposition that "[j]uveniles are entitled to the same due process protections as adults." However, Gault concerns only the scope of procedural due process required during the adjudicatory stage of juvenile proceedings. 387 U.S. at 13, 31 n. 48, 87 S.Ct. at 1436, 1445 n. 48. It does not address what substantive due process rights, if any, an adjudicated juvenile delinquent might have regarding the court's choice of a disposition from among the various available alternatives. In fact, recognizing that "[t]he problems of preadjudication treatment of juveniles, and of post-adjudication disposition, are unique to the juvenile process," the Court cautioned that its holding "with regard to the procedural requirements at the adjudicatory stage has no necessary applicability to other steps of the juvenile process." 387 U.S. at 31 n. 48, 87 S.Ct. at 1445 n. 48.
The courts of this state have long recognized the unique nature of juvenile delinquency proceedings. In State v. Boatman, 329 So.2d 309, 312-13 (Fla.1976), the court said:
Juvenile delinquency proceedings are neither wholly criminal nor civil in nature. The United States Supreme Court has refused to simplistically categorize juvenile proceedings as either "criminal" or "civil," avoiding thereby a "wooden approach." McKeiver v. Pennsylvania, 403 U.S. [528] at 541, 91 S.Ct. [1976] at 1984, 29 L.Ed.2d [647] at 658 [(1971)] (plurality opinion). While certain federal constitutional rights obtain in juvenile proceedings, others do not.
(Footnotes omitted.) In In the Interest of C.J. W., 377 So.2d 22, 24 (Fla.1979), the court rejected an argument made by the appellant child, noting that the argument failed to appreciate "the differences between adults and children and the differences between the objectives of the criminal and juvenile justice systems." The court said:
A child offender, even after being adjudged delinquent, is never held to be a criminal, even if the act would be considered a crime if committed by an adult. The key to this difference in approach lies in the juvenile justice system's ultimate aims. Juveniles are considered to be rehabilitatable. They do not need punishment. Their need lies in the area of treatment. Therefore, while a juvenile whose liberty the state seeks to restrain must be afforded a certain minimum standard of due process, it has never been held that he enjoys the full panoply of procedural rights to which one accused of crime is entitled.
Id. Similarly, in K.P. v. State, 327 So.2d 820, 821 (Fla. 1st DCA 1976), this court said:
[T]he juvenile court system in Florida is designed to substitute for retributive punishment alternative methods of training and treatment designed to further the correction and rehabilitation of children who violate the laws and to provide for the care, guidance and control which will be conducive to the child's welfare and the best interests of society.... Such purposes do not conform to the generally accepted characteristics of the "criminal process." In fact, it was the very attempt to depart from the traditional treatment of juvenile offenders as ordinary criminal defendants that led to the creation of juvenile courts throughout the country.
(Citation omitted.)
Another case which highlights the differences between the adult criminal system and the juvenile delinquency system is In the Interest of J. P., 405 So.2d 497 (Fla. 4th DCA 1981). There, the appealing juvenile complained that his right to equal protection of the law had been violated because the juvenile delinquency statute permitted the trial court to place him on probation for a period longer than the maximum period of incarceration that could have been imposed for his offense had he been convicted as an adult. The court rejected the juvenile's argument, concluding that, "because the underlying purposes and effects of the juvenile justice scheme as compared to the adult criminal *1208 justice system are substantially different, ... the state has the authority to treat juvenile violators differently." Id. at 498. In support of its conclusion, it noted that the purpose behind treating juvenile offenders differently from adults was to permit the state, through "a flexible system of rehabilitative treatment," "to prevent the juvenile from becoming an adult offender." Id. at 499. It noted, further, that different treatment of minors is permissible because the liberty interest of minors is qualitatively different from that of adults. That interest is subject to reasonable regulation by the state to an extent not permissible with adults. Moreover, that interest is subject to the rights of parents. When the state must remove a child from the parents' custody, either for the child's welfare or for that of the public, the state, in its role as parens patriae, succeeds to the parents' authority to limit the child's freedom of action. Id. at 498-99.
It is apparent that rehabilitation remains the principal focus of Florida's system for dealing with delinquent children. In this regard, the legislature has directed the Department to "develop and implement an appropriate continuum of care that provides individualized, multidisciplinary assessments, objective evaluations of relative risks, and the matching of needs with placements for all children under its care, and that uses a system of case management to facilitate each child being appropriately assessed, provided with services, and placed in a program that meets the child's needs"; and to "develop or contract for diversified and innovative programs to provide rehabilitative treatment." § 39.021(2) & (3), Fla.Stat. (1995). In addition, the Department is required to develop, as a part of the predisposition report, "a plan for treatment that recommends the most appropriate placement setting to meet the child's needs with the minimum program security that reasonably ensures public safety." § 39.052(4)(a), Fla.Stat. (1995).
Given the different goals of the juvenile delinquency and the adult criminal systems, and the former's emphasis on rehabilitation as the principal means by which to achieve the goal of preventing delinquent children from becoming adult offenders, we believe that it is constitutionally permissible for the trial court to impose whatever treatment plan it concludes is most likely to be effective for a particular child, as long as that plan does not pose a significant threat to the health or well-being of the child. In such a case, the state is doing nothing more than exercising its traditional role as parens patriae. Here, appellant does not challenge the accuracy of the information contained in the predisposition report, the need for psycho-sexual therapy and intervention in a residential environment or the suitability of the Manatee Adolescent Treatment Service for that purpose. Accordingly, we conclude that appellant has failed to establish that the recommended placement constitutes an infringement upon any right to substantive due process of law. We acknowledge that this conclusion can be read as being at odds with that reached in In the Interest of D.D., 564 So.2d 1224 (Fla. 4th DCA 1990). However, we believe that the holding in D.D. resulted from a failure to recognize the fundamental differences between the juvenile delinquency and the adult criminal systems.

IV.

The Recommendation Does Not Violate the Bobby M. Consent Decree
In Bobby M. v. Martinez, Case No. TCA 83-7003 MMP (N.D.Fla.), various state officers, acting in their official capacities, entered into a consent decree which, among other things, provided that adjudicated delinquent children would no longer be placed in "training schools" unless certain specified criteria had been satisfied. When the consent decree was signed, there were only two "training schools" in Florida. They were the Arthur C. Dozier School in Marianna, and the Eckerd Youth Development Center in Okeechobee. Those two facilities continue to be the only "training schools" in Florida. § 39.01(74), Fla.Stat. (1995). It is clear that the Manatee Adolescent Treatment Service is not a "training school," as that term is used in either the consent decree or the present statutes. Accordingly, there is no merit to appellant's argument that the recommended *1209 placement violates the consent decree.

V.

Conclusion
In summary, we hold (1) that we possess jurisdiction to hear this appeal; (2) that the recommended placement does not offend the due process clause of either the state or the federal constitution; and (3) that the trial court's action does not violate the federal consent decree in Bobby M. v. Martinez, Case No. TCA 83-7003 MMP (N.D.Fla.). Accordingly, we affirm.
AFFIRMED.
MICKLE and LAWRENCE, JJ., concur.