VAN NORTWICK, J.
In this juvenile delinquency appeal, AC.N. challenges an order entered pursuant to section 985.23(3)(c), Florida Statutes (1997), committing him to a high-risk residential program. Appellant argues that the trial court erred in sentencing him to a more restrictive level of commitment than the low-risk residential program recommended by the Department of Juvenile Justice. Because the reasons given by the trial court for disregarding the restrictiveness level recommended by the Department are not supported by competent substantial evidence, we reverse.
Appellant pled guilty to three counts of burglary to a conveyance or structure. His prior record and history in the juvenile justice system consisted of an allegation that he *370 threw eggs at a school bus, which matter was closed without sanctions. In a predisposition report, the Department recommended a low-risk residential placement. See section 985.03(45)(b), Florida Statutes (1997). The trial court rejected this recommendation and committed A.C.N. to the custody of the Department at the “high-risk residential” restrictiveness level. See § 985.03(45)(d), Fla. Stat. (1997). The trial court explained its reasons for disregarding the recommended restrictiveness level, stating that it was “departing from the recommendation of the Department because the recommendation fails to address the pattern of criminal activity of this child” and that “a residential program is necessary to punish, and it’s also necessary to protect the community from my (sic) further activities on his part.”
Section 985.23(3)(c), Florida Statutes (1997), governs the commitment proceeding in juvenile delinquency eases and provides, as follows:
The court shall commit the child to the department at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons which establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department. Any party may appeal the court’s findings resulting in a modified level of restrictiveness pursuant to this paragraph.
While the statute expressly affords the trial court the discretion to depart from the Department’s recommendation, the legislature did not grant the trial court the authority to reject the Department’s recommendation simply because it disagrees with the Department’s assessment. The reasons stated by the trial court are required to “establish ... why” the court is “disregarding,” in contrast to simply disagreeing with, the Department’s “assessment of the child and the [recommended] restrictiveness level.” Further, the trial court’s reasons for disregarding the recommendation of the Department must not only be stated on the record, the reasons also must be supported by a preponderance of the evidence; section 985.23, Florida Statutes (1997); see also Q.L.J. v. State, 714 So.2d 628 (Fla. 1st DCA 1998); R.D.S. v. State, 696 So.2d 1188 (Fla. 1st DCA 1997); J.M. v. State, 677 So.2d 890 (Fla. 3d DCA 1996); and, as Judge Griffin has observed, “the reason[s] must have reference to the characteristics of the restrictiveness level vis-a-vis the needs of the child.” J.L.O v. State, 721 So.2d 440, 443 (Fla. 5th DCA 1998) (Griffin, C.J., dissenting).[1]
Appellate review of the trial court’s order committing appellant to a modified level of restrictiveness is expressly authorized by the last sentence of section 985.23(3)(c). See J.M., 677 So.2d at 891-892. Because this statute requires that the decision of the trial court to disregard the Department’s recommendation must be supported by a preponderance of the evidence, our standard of review is whether the trial court’s findings are supported by competent substantial evidence. See L.O. v. State, 718 So.2d 155, 157 (Fla.1998); Dravo Basic Materials Co., Inc. v. Department of Transp., 602 So.2d 632, 635 (Fla. 2d DCA 1992); see generally Philip J. Padovano, Florida Appellate Practice, § 9.6 (West 1997).
In the instant case, the trial court stated that its primary reason for committing appellant to a high-risk residential program was because the Department’s recommendation for low-risk restrictiveness “fails to address the pattern of criminal activity of this child.” However, the Department’s report, through which it recommended a low-risk restrictiveness level, described and weighed A.C.N.’s entire criminal activities in great detail. Thus, this reason has no factual support in the record.
The trial court also stated that “a residential program is necessary to punish” appellant and “to protect the community.” *371 Although the principal focus of the juvenile system is rehabilitation, with the aim of preventing further delinquent or criminal acts, see P.W.G. v. State, 682 So.2d 1203, 1208 (Fla. 1st DCA 1996), aff'd, 702 So.2d 488 (Fla.1997), the protection of society and punishment of the child are appropriate considerations. See, e.g., sections 985.01(c) and 985.03(45)(d), Florida Statutes (1997); see also Q.L.J., 714 So.2d at 630 (“[I]t was clearly proper for the trial court to be concerned about the need to protect society from the possibility that appellant might commit further criminal acts.”). The restrictiveness level recommended by the Department, however, requires the placement of appellant in a residential program. See § 985.03(45)(b), Fla. Stat. (1997). Thus, a departure from the Department’s restrictiveness recommendation was not supported by the stated reasons, and the trial court did not explain why a more secure residential placement was required. Unlike Q.L.J., 714 So.2d at 630, the trial court here does not state how the violent or serious nature of the appellant’s offenses or the surrounding circumstances might- establish a need for 24-hour-per-day secure custody, care, and supervision of appellant. § 985.03(45)(d), Fla. Stat. (1997); see also J.M., 677 So.2d at 892-893.
REVERSED and REMANDED.
BENTON AND PADOVANO, JJ., CONCUR.

. The staff analysis prepared for HB 1369, which . created Chapter 985, Florida Statutes, explains that a trial court's “decision in placing a youth is based upon information in the DJJ pre-disposition report (PDR) and statutory guidelines for disposition of juvenile cases.” House of Representatives Committee On Juvenile Justice, Bill Research & Economic Impact Statement (HB 1369) (March 27, 1997 & April 4, 1997)(empha-sis added).