737 So.2d 1244 (1999)
A.G., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 98-2393.
District Court of Appeal of Florida, Fifth District.
August 6, 1999.
*1246 James B. Gibson, Public Defender, and James Whitehouse, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Alfred Washington, Jr., Daytona Beach, for Appellee.
W. SHARP, J.
A.G. appeals an order of disposition after he pled no contest to two counts of possession of cocaine.[1] The Department of Juvenile Justice (DJJ) recommended a Level 6 disposition, but the trial judge imposed a Level 8 after the state requested it. A.G. waived counsel at the disposition hearing, and he argues on appeal that the trial court erred in proceeding to disposition without determining if his waiver was knowing and voluntary, as provided in Fla.R.Juv.P. 8.185. We agree and reverse.
The Public Defender's Office represented A.G. at the pretrial hearing and at the plea hearing. However, at the beginning of the dispositional hearing the public defender, Gillard, informed the court that she was not sure whether the Public Defender's Office had been appointed in this case. The court did not advise A.G. of his right to counsel or inquire if A.G. comprehended the nature of the rights he would be waiving as required by Rule 8.165. Instead the judge asked:
Okay. [A.G.], the Department of Juvenile Justice has recommended a Level 6 commitment program for you. Would you like to have a lawyer now?
A.G. responded "No, ma'am."
The state's objection to the DJJ's recommendation was based on its claim that A.G. had three previous charges. The state attorney also argued that not enough was being done to protect the community from the sale of illegal drugs, and Level 6 was not "doing the job." Then he pointed out that A.G.'s brother (who had been in Level 6) "took off," and suggested that a Level 8 commitment would cause A.G. to never want to do drugs again.[2]
A.G. responded that he had only had two possession charges, and that if the court would let him go to Level 6 he would change because he'd been told "how it is," and there would be the possibility of a job. The judge responded[3] that it was apparent *1247 that there was a population of young men in the community who were poisoning it with cocaine, over and over again. The judge stated she had given each child who had come before her the benefit of the doubt; including A.G.'s brother and sister, although she understood their cases had nothing to do with A.G's case. However, she was "fed up with cocaine peddlers coming into" the courtroom, and she thought it was appropriate to "ratchet up" these commitments because Level 6 was not "cutting it." Those were her reasons for departure from the Department's Level 6 recommendation.
A.G. asked if he could appeal, and the court responded in the affirmative. The judge stated that she knew A.G.'s family, and concluded for the record:
That decision [increasing the level] was also buttressed by the fact of that child's prior violent record
And as long as we're making a record, in the event this is going to be examined by the Appellate Court, let me buttress the record again by saying this Court is very familiar with Mr. Green's family, the environment that he would be released to should he be committed to a Level 6 and released to his family's custody, my concern is that environment would not necessarily foster his remaining straight and clean and in compliance with the law, and that I believe it is in the child's best interests, and certainly in the interest and the safety of the community to commit him to a Level 8.
We must reverse this disposition because there was no inquiry into the knowing and intelligent waiver of counsel by A.G. A juvenile has a constitutional right to the assistance of counsel at all critical stages of delinquency proceedings. Both the denial of that right and the failure to comply with Fla.R.Juv.P. 8.165 are fundamental error. A.D. v. State, 1999 WL 420288, ___ So.2d ___ (Fla. 5th DCA June 25, 1999); J.O. v. State, 717 So.2d 185 (Fla. 5th DCA 1998); J.R.V. v. State, 715 So.2d 1135 (Fla. 5th DCA 1998). If a juvenile waives counsel, the court must inquire of him to determine if the waiver is freely and intelligently made. See, T.G. v. State, 24 Fla. L. Weekly D216, ___ So.2d ___, 1999 WL 13343 (Fla. 5th DCA January 15, 1999); Rule 8.165.
The judge in this case only asked A.G. if he would like to have a lawyer; he responded no and the hearing proceeded. Thus, the record establishes that A.G. was not advised of the nature of the rights he was waiving, there was no determination that he understood the consequences of waiving legal representation, and there is no showing that the waiver was knowing and intelligently made. This amounts to reversible error. See J.M. v. State, 677 So.2d 890, 891 (Fla. 3d DCA 1996); J.G.S. v. State, 435 So.2d 942 (Fla. 2d DCA 1983). See also A.D.; U.S. Const. Amend. VI and XIV; Art. 1 § 9 and 19(a), Fla. Const.; §§ 985.23 and 985.203; L.R. v. State, 698 So.2d 915 (Fla. 4th DCA 1997); In the Interest of J.H., 580 So.2d 162 (Fla. 4th DCA 1991), approved, 596 So.2d 453 (Fla. 1992).
However, we also write to review the requirements of section 985.23(3)(c) with respect to the court's authority to disregard the DJJ's recommendations. Section 985.23(3)(c) provides that the court can order placement at a restrictiveness level which differs from the DJJ's recommendations. But the court may not do so merely because it disagrees with those recommendations. A.C.N. v. State, 727 So.2d 368 (Fla. 1st DCA 1999). Not only must the court state in writing or in the record its reasons for disregarding the recommended level, but in addition, the reasons must reference the characteristics of the restrictiveness level vis-a-vis the needs of the child. A.C.N. And the reasons must be supported by a preponderance of the evidence. § 985.23(3)(c); A.C.N. v. State, *1248 727 So.2d 368 (Fla. 1st DCA 1999); M.C.P. v. State, 732 So.2d 339 (Fla. 1st DCA 1998); Q.L.J. v. State, 714 So.2d 628 (Fla. 1st DCA 1998).
Our review on appeal is limited to a determination of whether the trial court's findings are supported by competent substantial evidence. A.C.N. If the trial court fails to make specific findings to support its determination and disregards the DJJ's recommendations without sufficient reasons, or there is no evidence in record that the court has considered the dispositional report, the cause must be reversed and remanded. K.C. v. State, 721 So.2d 398 (Fla. 2d DCA 1998). Similarly, where the reasons involve a juvenile's family, or other reasons which are unrelated to the juvenile before the court, they cannot constitute competent substantial evidence under the statute.[4]
In this case, although the court considered the DJJ's recommendations, the reasons articulated constitute only disagreement with the recommendations, and they do not reference the commitment level with respect to A.G.'s needs. The number of prior criminal acts committed by A.G., and whether violence was involved, was not established by this record. In addition, the avowed purpose, to send a message to juveniles in the community, is not a valid reason to disregard the DJJ's recommendations. Further, the acts of A.G.'s family, the judge's personal knowledge of his family, or her belief that A.G.'s family would not provide an environment in which A.G. would be likely to remain crime-free, are not supported by the record, nor are they valid reasons to disregard the DJJ's recommendations. If A.G.'s environment is abusive or neglectful to the extent that he cannot remain crime-free in it, the proper remedy is a dependency proceeding under Chapter 39. Accordingly, this case is reversed and remanded.
REVERSED AND REMANDED.
HARRIS and THOMPSON, JJ., concur.
NOTES
[1] § 893.13(6)(a), Fla. Stat. (1997).
[2] Specifically, the state argued:

We're not doing enough to protect this community from the sale of illegal and harmful drugs. We have to make the benefits to this child outweighed by the consequences, and, therefore, I would encourage this Court to commit this child to a Level 8 program in hopes that the Level 8 program would somehow outweigh the benefits this child sees in selling crack.
I mean the Level 6 is not doing the job and we'rethat's evident by the number of repeat cases we see in here. Every time we send this child to a Level 6, he's out there selling crack again. It's evident in this particular family by his little brother who's waiting in a Level 6 placement, cut off his EM and took off.
And so I would ask this Court to commit this child to a Level 8 program in hopes that those costs would be of such a concern to this child that he would never want to deal drugs again when he gets out of the jail or out of the commit program.
[3] Specifically, the court stated:

[I]n this case, it just becomes very apparent to me that there is a population of young men in this community who are poisoning this community with cocaine, and it is happening over and over and over again. And I have given child after child the benefit of the doubt, including your brother and other members of your family.
That doesn't have anything to do with you, and I understand that. But the message is not being sent. And the Level 6 programs are not doing their job.
* * * * * *
And I am fed up with cocaine peddlers coming into this courtroom time after time after time. And so I think it looks appropriate, given this community, to ratchet up these commitments one more step and respond in that manner and see where we get because Level 6 is not cutting it. That is the reason for my departure. (Emphasis added)
[4] We note, however, that protection of the community may, under certain limited circumstances, be a factor to be considered by the court. A.C.N. v. State, 727 So.2d 368 (Fla. 1st DCA 1999).