LEWIS, J.
In this juvenile delinquency appeal, C.C.B., appellant, seeks review of an order of disposition that adjudicated him delinquent and committed him to the Department of Juvenile Justice (DJJ) for high-risk residential placement to be followed by probation. Appellant argues that his commitment to a high-risk residential program must be reversed because the trial court failed to justify its decision to depart from the DJJ’s recommendation of probation. Concluding that the reasons set forth by the trial court for departing from the DJJ’s recommendation of probation are not supported by competent, substantial evidence, we reverse.
By delinquency petition, the State charged appellant with unlawfully making a false report of a bomb[1] at his high school on October 9, 2001. The trial court subsequently found that appellant committed a delinquent act and ordered a predisposition report. After reviewing the facts of this offense and appellant’s behavior at both home and school, the DJJ recommended that the court place appellant on probation and that it withhold adjudication of delinquency.
In the predisposition report, the DJJ noted that it considered the fact that appellant was “obviously” experiencing difficulty in the school setting. The DJJ was aware that appellant’s discipline record, the current charge and past school history indicated that such areas needed to be addressed. However, the DJJ hoped that supervision, in combination with a treatment plan through mental health, would help to improve appellant’s behavior in school, while still holding him accountable for his actions. The DJJ set forth an intervention plan within its predisposition report that included such concerns as public safety, accountability and competency development.
At the disposition hearing, the State requested a high-risk commitment. The trial court then adjudicated appellant delinquent and committed him to high-risk placement. The trial court, in departing from the DJJ’s recommendation, stated that “these particular types of offenses,” or bomb threats, must be a factor that goes into the court’s consideration, in that the evacuations that are caused by such offenses serve to disrupt the educational process. The trial court noted that 2001 was a year plagued by an epidemic of bomb threats made by young people. The court repeatedly stated that it felt it important in its sentence to send a clear message to other young people in the community, as well as considering what it thought best for the community. In noting that it understood that appellant had no prior record, the court found that the recommendation of probation was totally insufficient to address “in any meaningful way” its considerations. Appellant filed a timely notice of appeal as to the court’s disposition.
During the pendency of the appeal, appellant filed a Motion to Correct Disposi *431 tion Error, pursuant to Florida Rule of Juvenile Procedure 8.135(b)(2) with the trial court. Appellant argued the same points in his motion as he does now on appeal. In denying appellant’s motion, the court found that the departure was necessary for four reasons: (1) to address the epidemic of bomb threats (80 during 2001), (2) rehabilitation efforts, (3) public safety and (4) that supervised probation would not afford resources that high-risk commitment can in terms of rehabilitation, adequate supervision and safety. This appeal followed.[2]
Section 985.23(3)(c), Florida Statutes (2001), provides:
[t]he court shall commit the child to the department at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons which establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department.
This Court has previously held that, while this section expressly affords the trial court the discretion to depart from the DJJ’s recommendations, the Legislature did not grant the trial court .the authority to reject the recommendation simply because it disagrees with the DJJ’s assessment. A.C.N. v. State, 727 So.2d 368, 370 (Fla. 1st DCA 1999). The trial court must not only state its reasons for disregarding the recommended restrictiveness level on the record, the reasons must also be supported by a preponderance of the evidence and must make reference to the characteristics of the restrictiveness level vis-a-vis the needs of the child. Id. Because the trial court’s findings must be supported by a preponderance of the evidence, our standard of review is .whether the trial court’s findings are supported by competent, substantial evidence. See id.
 From our review of the record, the trial court’s primary reason for its departure during the disposition hearing was its desire to send a message to the community’s youth because of the alleged epidemic of bomb threats in 2001. However, a trial court’s avowed purpose of sending a message to the juveniles in the community is an invalid reason to disregard the DJJ’s recommendation. A.G. v. State, 737 So.2d 1244, 1248 (Fla. 5th DCA 1999). Moreover, the trial court’s decision to depart from the DJJ’s recommended restrie-tivehess level based upon the nature of the charge will not satisfy the requirements that the court must meet. K.M.T. v. State, 695 So.2d 1309, 1310 (Fla. 2d DCA 1997).
We find the trial court’s reasoning in departing from the DJJ’s recommendation in the instant case to be very similar to the court’s reasoning in A.G. In A.G., the appellant pled no contest to two counts of possession of cocaine.. 737 So.2d at 1246. While the DJJ recommended a level six disposition, the trial court imposed a level eight disposition. Id. During the disposition hearing, the trial judge stated that, “it was apparent that there was a populátion of young men in the community who were poisoning it with cocaine....” Id. at 1246-47. The trial judge also noted that while she had given each child who had come before her the benefit of the doubt, she was “fed up with cocaine peddlers coming into [the] courtroom time after time after time.” Id.
Subsequent to the appellant’s inquiry as to whether or not he could appeal the *432 decision in A.G., the trial judge then stated, among other reasons, that such departure was in appellant’s best interests and in the interest and safety of the community, as well as being supported by appellant’s “prior violent record.” Id. The Fifth District Court of Appeal, in reversing and remanding, held that the number of prior criminal acts and whether violence was involved was not established in the record, nor was sending a message to the community’s juveniles a valid reason to disregard the DJJ’s recommendations. Id. at 1248.
Like the trial court in A.G., the trial court in the instant case departed from the DJJ’s recommendation primarily because of its avowed purpose to send a message to the community. The trial court initially stated that bomb threats are a type of offense that it must consider when determining whether to follow the DJJ’s recommendation. It stated three times its desire to send a message to the community’s juveniles. Moreover, the trial court’s first reason in its order denying appellant’s Motion to Correct Sentencing Error was to address the epidemic of bomb threats, 80 during 2001, even though the alleged epidemic and the actual number of threats were not supported by any testimony in the record. Thus, we reverse appellant’s commitment to high-risk placement because the trial court’s primary reason of sending a message to the community’s youth was not a valid reason for departing from the DJJ’s recommendation, nor was the alleged epidemic of bomb threats established in the record.
We find further support for our reversal of the trial court’s departure from the recommended restrictiveness level in this case in A.C.N. In A.C.N., the DJJ recommended that the appellant, who pled guilty to three counts of burglary to a conveyance or a structure, be committed to a low-risk residential program. 727 So.2d at 369. However, the trial court rejected such recommendation and committed the appellant to a high-risk residential restrictiveness level. Id. at 370. In doing so, the trial court stated that it departed from the recommendation because the recommendation “failed to address the pattern of criminal activity of the [appellant] and that a residential program is necessary to punish, and it’s also necessary to protect the community” from any further criminal activity on the appellant’s part. Id.
This Court, in reversing and remanding, held that the trial court’s primary reason regarding the appellant’s criminal history had no factual support in the record because the DJJ, in forming its recommendation, described and weighed the appellant’s entire criminal history in great detail. Id. In reviewing the reasons regarding public safety and punishment, this Court found that, while such considerations are appropriate, the trial court failed to explain why a more secure residential placement was necessary for the community’s protection. Id. at 371.
This Court also noted in A.C.N. that the trial court failed to state how the violent or serious nature of the appellant’s offenses might establish a need for 24-hour per-day secure custody, care and supervision for the appellant. Id.; see also T.S. v. State, 801 So.2d 171, 173 (Fla. 5th DCA 2001) (reversing the trial court’s level eight commitment when the DJJ had recommended a level six disposition for the juvenile). But see E.L. v. State, 715 So.2d 353, 354 (Fla. 1st DCA 1998) (affirming the trial court’s departure because of its determination that moderate-risk placement was insufficient due to the appellant’s criminal history and his previous stay in such placement).
Here, the DJJ took appellant’s family and educational history into account when determining its recommendation of proba *433 tion, just as it had in A.C.N. The DJJ was well aware that appellant was “obviously” experiencing difficulty in the school setting. The DJJ hoped though, that supervision, in combination with a treatment plan through mental health, would help to improve appellant’s behavior in school, while still holding him accountable for his actions. In departing from this recommendation of probation, the trial court acknowledged the recommendation by stating that it was totally insufficient to address “in any meaningful way” its considerations in determining the appropriate sentence. However, while probation may not have sufficiently addressed the trial court’s considerations of rehabilitation, adequate supervision and safety, the court failed to state why the recommendation would not do so. While the trial court’s final reason in its order denying appellant’s Motion to Correct Sentencing Error set forth that supervised probation would not afford resources that high-risk commitment would, this reason does not sufficiently reference the characteristics of the restrictiveness level vis-a-vis the needs of appellant. See A.C.N., 727 So.2d at 370.
Although the trial court did not err in adjudicating appellant delinquent, the reasons articulated by the trial court for departing from the DJJ’s recommendation of probation constituted only disagreement with the DJJ, and, like A.C.N., did not reference the commitment level with respect to appellant’s needs. The trial court’s desire to send a message to the community’s youth was not a valid reason for disregarding the DJJ’s recommendation. See A.G., 737 So.2d at 1248. In addition, the alleged epidemic of bomb threats in 2001 was not established in the record. Furthermore, while we note that the protection of society and the punishment of the child are appropriate considerations for the trial court to take into account, the trial court failed to explain why high-risk commitment and 24-hour per-day secure custody, care and supervision was necessary for appellant, who had no prior criminal record, and for the safety of the community. See A.C.N., 727 So.2d at 371. Thus, the trial court’s departure from the DJJ’s recommendation of probation was not supported by competent, substantial evidence. Accordingly, we reverse and remand for a new disposition hearing.
REVERSED and REMANDED.
BROWNING and POLSTON, JJ., concur.

. See § 790.163 Fla. Stat. (2001).

. While appellant failed to object to the high-risk commitment during the disposition hearing, appellant preserved this issue for appellate review by filing his motion pursuant to rule 8.135(b)(2). See E.S.B. v. State, 822 So.2d 579, 580 n. 1 (Fla. 1st DCA 2002).