724 So.2d 1144 (1998)
STATE of Florida, Petitioner,
v.
E.D.P., a Child, Respondent.
No. 92345.
Supreme Court of Florida.
October 8, 1998.
Robert A. Butterworth, Attorney General, James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals, and Kristina White, Assistant Attorney General, Tallahassee, for Petitioner.
Nancy A. Daniels, Public Defender, and P. Douglas Brinkmeyer, Assistant Public Defender, Chief, Appellate Intake Division, Second Judicial Circuit, Tallahassee, for Respondent.
SHAW, Justice.
We have for review E.D.P. v. State, 23 Fla. L. Weekly D348, ___ So.2d ___, 1998 WL 25483 (Fla. 1st DCA Jan.27, 1998), wherein the First District Court of Appeal certified the following question:
DOES THE TRIAL JUDGE, ACTING AFTER A DISPOSITION HEARING AND BASED ON SPECIFIC REASONS, HAVE THE AUTHORITY TO REJECT THE DEPARTMENT'S COMMUNITY CONTROL RECOMMENDATION WITHOUT REMANDING THE CASE TO THE DEPARTMENT FOR AN ALTERNATIVE RECOMMENDATION?
Id. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the affirmative and quash E.D.P.
E.D.P. pled guilty to possession of marijuana and the trial court adjudicated him delinquent. The Department of Juvenile Justice (DJJ) recommended community control in its predisposition report (PDR), but the trial court rejected the recommendation and committed E.D.P. to the custody of the DJJ at the "low-risk residential"[1] restrictiveness level.[2] The trial court explained its reasons for ordering a residential program in lieu of the DJJ's community control recommendation:[3]

*1145 THE COURT: Come forward, [E.D.P.]. They're recommending community control. That is not acceptable to me. I intend to go with a Level 4 commitment to the Step or Stop camp for boys followed by JMI. In Case 97-3295, and the reason I'm deviating from the recommendation, is because this possession of marijuana was at school, during the daytime or nighttime?
THE CHILD: Daytime.
THE COURT: And on top of that, it was at the worst alternative school we have, Gran Park Alternative School. That's the highest alternative school, which means you've been kicked out of the regular school.
....
THE COURT: ... So you're in the worst alternative school, at which point where these drugs were obtained. In addition to that, there is some indication he might be related to some gang of some kind.
....
MR. SLAMA [DEFENSE COUNSEL]:... We would object, Judge, from departing recommendation from DJJ as well as the staffing committee. It appears that and I understand the Court's concern. There is some comment in there about some gang or what have you.
He is in the eighth grade and in his grades he seems to be doing well. My understanding is that his overall score was an 85, which is the equivalent of a "B" average. He is an intelligent child and does understand that he does have a problem which he's willing to deal with.
In addition, he does have a strong family background, which I think could help him with this. It also says in here on the positive side, that he's not a problem at home. They do engage in family activities and he's not a problem to his parents. I think there is something, Judge, that there is something to work with.
THE COURT: Okay. After commitment, I won't require him to go to JMI [Jacksonville Marine Institute]. I'll permit him to remain at the Gran Park School, of course, on the condition there [are] no referrals or anything.
Once there is a referral of any kind, even if it doesn't amount to a crime, I'm pulling you out.
THE CHILD: Yes, sir.
....
THE COURT: All right. You have some potential if you decide you want to stop violating laws.
Okay. Mr. [E.D.P.], I'm going to adjudicate you to be delinquent of the offense of possession of marijuana, less than 20 grams. I'm going to commit you to the Department of Juvenile Justice at Level 4, low risk, for placement in either the Step camp or Stop camp for boys. Those are about 30 to 40-day programs.
I'm going to place you on post commitment community control. That means after your commitment is over and [you're] back at home, the conditions of your community control are:
You can have no further violations of law of any kind. You must obey all the reasonable demands of every authority in your life, whether it's your father or your mother, or the police or your juvenile justice counselor or any teacher, dean or principal or any employer. Any reasonable demand these individuals make on your life I'm going to hold you personally accountable to obey everything they tell you, whether you like it or not.
Is that clear?
THE CHILD: Yes, sir.
THE COURT: I'm going to order you to maintain your enrollment in school, that your parents decide you will attend. You can have no unexcused absences to any class, no unexcused tardies, no suspensions no referrals for misbehavior.
You're going to have a 6:00 p.m. curfew, sir. In fact, I'm going to put you on what we call pre and post commitment community control before your commitment starts and then after its over, it's the same type of probation in community control.
I'm going to require you to be inside your house every night by 6 o'clock p.m., not a minute later. I'm going to order your parents to enforce the curfew. That means if he violates, you're under an order to report it. If you don't, you could face contempt proceedings yourselves. That is, the parents can.
There are four exceptions to this 6:00 p.m. curfew. He can be out past 6 o'clock *1146 if he is out with you or his mother somewhere in your personal company at all times. He can get a job and he can work past 6 o'clock. He can go to a school function past 6:00 if his attendance is required, and he can go to a church activity past 6:00.
But when the work, church or school function is over with, whatever time that is, you've got 30 minutes to leave that facility and get to the front door of your parents' house.
Is that clear?
THE CHILD: Yes, sir.
....
MR. SLAMA: Judge, just for the record so our record is clear, even though you modified the sentence, not including JMI, we would still object to the sentence as opposed.
THE COURT: I understand.
MR. SLAMA: Thank you.
The district court reversed the order of commitment, holding that the trial court must remand the case to the DJJ for a second recommendation which specifically identifies a restrictiveness level,[4] and certified the above question.[5] The State argues that this two-recommendation process is redundant and wasteful of judicial resources. We agree.
Section 39.052, Florida Statutes (Supp. 1996), governs disposition proceedings in juvenile delinquency cases and states in pertinent part:
(4)DISPOSITION HEARING FOR DELINQUENCY CASES.When a child has been found to have committed a delinquent act, the following procedures shall be applicable to the disposition of the case:
(a) At the disposition hearing, the court shall consider a predisposition report regarding the suitability of the child for disposition other than by adjudication and commitment to the department. The predisposition report shall be the result of the multidisciplinary assessment when such assessment is needed, and of the classification and placement process, and it shall indicate and report the child's priority needs, recommendations as to a classification of risk for the child in the context of his or her program and supervision needs, and a plan for treatment that recommends the most appropriate placement setting to meet the child's needs with the minimum program security that reasonably ensures public safety. ...
....
(e)1. If the court determines that the child should be adjudicated as having committed a delinquent act and should be committed to the department, such determination shall be in writing or on the record of the hearing. The determination shall include a specific finding of the reasons for the decision to adjudicate and to commit the child to the department, including any determination that the child was a member of a criminal street gang.
2. If the court determines that commitment to the department is appropriate, the intake counselor or case manager shall recommend to the court the most appropriate placement and treatment plan, specifically identifying the restrictiveness level most appropriate for the child. If the court has determined that the child was a member of a criminal street gang, that determination shall be given great weight in identifying the most appropriate restrictiveness level for the child. The court shall consider the department's recommendation in making a commitment decision.

*1147 3. The court shall commit the child to the department at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons which establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department.
Id. (emphasis added). The Second District Court of Appeal addressed this issue in D.L.B. v. State, 707 So.2d 844 (Fla. 2d DCA 1998), wherein the trial court rejected the DJJ's community control recommendation and imposed a level-six restrictiveness commitment. The Second District, in D.L.B., disagreed with the First District's interpretation of the statute in the present case:
The statute provides that, before committing the juvenile, the court must consider the restrictiveness level recommended by the Department....
... We do not believe the statute requires the court, once it has already rejected the Department's non-commitment recommendation, to then ask the Department for a second recommendation. A request for a second recommendation would seem particularly unnecessary in view of section 39.052(4)(e)3., Florida Statutes (1995), the next paragraph of the statute, which allows the court to reject the Department's restrictions level recommendation provided that the court state for the record the reasons for its deviation from the Department's recommendation. For these reasons, we find ... no error in the court's refusal to request a second recommendation from the Department.
Id. at 845.[6] We agree with the Second District's analysis and conclusion. We further note that community control is a restrictiveness level recommendation within the minimum-risk nonresidential category:
Minimum-risk nonresidential.Youth assessed and classified for placement in programs at this restrictiveness level represent a minimum risk to themselves and public safety and do not require placement and services in residential settings. Programs or program models in this restrictiveness level include: community counselor supervision programs, special intensive group programs, nonresidential marine programs, nonresidential training and rehabilitation centers, and other local community nonresidential programs.
§ 39.01(59)(a), Fla. Stat. (Supp.1996) (emphasis added).
In the present case, the trial court complied with the statute's requirement to consider the DJJ's recommendation and its authorization to reject the recommendation and "order placement at a different restrictiveness level."[7] Accordingly, we answer the certified question in the affirmative and quash the decision below.
It is so ordered.
HARDING, C.J., and OVERTON and WELLS, JJ., concur.
ANSTEAD, J., dissents with an opinion, in which KOGAN and PARIENTE, JJ., concur.
ANSTEAD, Justice, dissenting.
While I might agree that the procedure approved by the majority appears to be more efficient, I cannot agree that this is what the statutory scheme provides.[8] Section 39.052, *1148 Florida Statutes (Supp.1996), outlines the procedure courts must follow in delinquency proceedings:
(4) DISPOSITION HEARING FOR DELINQUENCY CASES.-When a child has been found to have committed a delinquent act, the following procedures shall be applicable to the disposition of the case:
(a) At the disposition hearing, the court shall consider a predisposition report regarding the suitability of the child for disposition other than by adjudication and commitment to the department. The predisposition report shall be the result of the multidisciplinary assessment when such assessment is needed, and of the classification and placement process, and it shall indicate and report the child's priority needs, recommendations as to a classification of risk for the child in the context of his or her program and supervision needs, and a plan for treatment that recommends the most appropriate placement setting to meet the child's needs with the minimum program security that reasonably ensures public safety. The report shall be submitted to the court prior to the disposition hearing, but shall not be reviewed by the court without the consent of the child and his or her legal counsel until the child has been found to have committed a delinquent act.
....
(e) ....
2. If the court determines that commitment to the department is appropriate, the intake counselor or case manager shall recommend to the court the most appropriate placement and treatment plan, specifically identifying the restrictiveness level most appropriate for the child. If the court has determined that the child was a member of a criminal street gang, that determination shall be given great weight in identifying the most appropriate restrictiveness level for the child. The court shall consider the department's recommendation in making its commitment decision.

3. The court shall commit the child to the department at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons which establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department. Any party may appeal the court's findings resulting in a modified level of restrictiveness pursuant to this subparagraph.
§ 39.052(4)(a), (e), Fla. Stat. (Supp.1996) (emphasis added). Under a fair reading of this statute, once the trial court finds that a child has committed a delinquent act, the court must hold a disposition hearing to determine whether the child should be adjudicated and committed to the DJJ, or not adjudicated and sanctioned under an appropriate community-based program. In making this determination, the court must consider any predisposition report by the DJJ recommending disposition other than adjudication.
Further, should the court decide to adjudicate the child guilty of the delinquent act and commit him or her to the DJJ, subsection 39.052(4)(e)2., then requires the DJJ to make a recommendation "specifically identifying the restrictiveness level most appropriate for the child." Section 39.052(4)(e)2. also requires the trial court to consider the DJJ's recommendation as to the "restrictiveness level" to be invoked. Of course, subsection (e)3. allows the trial court to depart from the DJJ's recommendation if it finds that, based on the preponderance of the evidence, the child should be committed to a different restrictiveness level. Thus, section 39.052(4) provides a two-step process for courts to follow once a child has been found delinquent and the court determines to adjudicate the child guilty and commit him or her to the DJJ.
In D.L.B., the case relied upon by the majority, the trial court found the child delinquent under section 870.01, Florida Statutes (1995), for fighting in a public place. The court rejected the DJJ's predisposition recommendation of community control and imposed a level-six restrictiveness level commitment. The second district affirmed the order of commitment, holding that:
We do not believe the statute [39.052] requires the court, once it has already rejected the Department's non-commitment recommendation, *1149 to then ask the Department for a second recommendation. A request for a second recommendation would seem particularly unnecessary in view of section 39.052(4)(e)3., Florida Statutes (1995), the next paragraph of the statute, which allows the court to reject the Department's restrictions level recommendation provided that the court state for the record the reasons for its deviation from the Department's recommendation.
707 So.2d at 845 (emphasis added). Although this procedure may make sense in terms of judicial efficiency, it ignores completely the statutory provisions quoted and discussed above requiring trial courts to consider an initial predisposition report before disposition and a subsequent recommendation, if commitment is chosen, upon disposition.
The first district, on the other hand, has consistently held that section 39.052 "unequivocally requires the court to receive and consider a recommendation from the Department as to restrictiveness level before ordering a commitment." J.P.M. v. State, 688 So.2d 458, 458 (Fla. 1st DCA 1997) (quoting S.R. v. State, 683 So.2d 576, 576 (Fla. 1st DCA 1996)) (emphasis added).[9] These cases hold that it is error for trial courts to impose commitment without first considering a restrictiveness level recommendation by the DJJ.[10] The First District reasons that community control is not a restrictiveness level, *1150 and therefore section 39.052(4)(e)3. "does not apply where the change is from community control to commitment." J.P.C., 712 So.2d at 1231; see also L.R.J., 706 So.2d at 73.
At issue in most, if not all, of these cases is whether "community control" is a specific restrictiveness level from which the trial court may depart. If community control is simply a restrictiveness level, then it would appear to be superfluous for trial courts to request a second recommendation, since the department would have already suggested a restrictiveness level, i.e., community control. The majority opinion appears to be based on that reasoning.
However, under the definition section of chapter 39, community control is defined as "an individualized program in which the freedom of the child is limited and the child is restricted to noninstitutional quarters or restricted to the child's home in lieu of commitment to the custody of the Department of Juvenile Justice." § 39.01(16), Fla. Stat. (Supp.1996) (emphasis added). Hence, community control is defined as something entirely different than a commitment to DJJ at any restrictiveness level. "Restrictiveness Level" is defined as "the level of custody provided by programs that service the custody and care needs of committed children." Id. § 39.01(59) (emphasis added). Thus, the terms "community control" and "restrictiveness level" appear to be mutually exclusive since community control is a program in lieu of commitment and restrictiveness levels only apply where a child is committed.[11]
Subsection (4)(f) further supports this conclusion because it allows the court to impose community control: "If the court determines not to adjudicate and commit to the department, then the court shall determine what community-based sanctions it will impose in a community control program for the child." See § 39.052(4)(f). In other words, the statute distinguishes between possible sanctions for a delinquent child: under (4)(e) the court may impose commitment to the custody of the DJJ if it determines the child should be adjudicated or, under (4)(f), the court may impose community control if it decides not to adjudicate the child guilty of the delinquent act. Because the legislature wrote the entire scheme, it must be presumed that it was aware of the predisposition report requirement under subsection (4)(a)1. when it included the additional recommendation requirement in subsection (4)(e).[12] In other words, had the legislature intended trial courts to consider only the predisposition report in subsection (4)(a), then the requirement in subsection (4)(e)2. that the DJJ recommend, and the courts consider, a specifically *1151 identified restrictiveness level would be meaningless and superfluous. Furthermore, by definition, the predisposition report could never satisfy the requirement in subsection (4)(e)2. because it is designed to recommend a sanction other than adjudication and commitment. Because the report only concerns a sanction other than commitment, it would obviously not treat or recommend an appropriate restrictiveness level.
KOGAN and PARIENTE, JJ., concur.
NOTES
[1] Section 39.01(59)(b) defines "low-risk residential" as:

Youth assessed and classified for placement in programs at this level represent a low risk to themselves and public safety and do require placement and services in residential settings. Programs or program models in this restrictiveness level include: Short Term Offender Programs (STOP), group treatment homes, family group homes, proctor homes, and Short Term Environmental Programs (STEP).
§ 39.01(59)(b), Fla. Stat. (Supp.1996)(current version at § 985.03(45)(b), Fla. Stat. (1997)).
[2] "`Restrictiveness level' means the level of custody provided by programs that service the custody and care needs of committed children." Id. § 39.01(59)(current version at § 985.03(45), Fla. Stat. (1997)).
[3] Community control does not require commitment to the custody of the DJJ:

"Community control" means the legal status of probation created by law and court order in cases involving a child who has been found to have committed a delinquent act. Community control is an individualized program in which the freedom of the child is limited and the child is restricted to noninstitutional quarters or restricted to the child's home in lieu of commitment to the custody of the Department of Juvenile Justice.
§ 39.01(16), Fla. Stat. (Supp.1996) (emphasis added) (current version at § 985.03(12), Fla. Stat. (1997)).
[4] Section 39.01(59) lists and defines five restrictiveness levels: (a) minimum-risk nonresidential; (b) low-risk residential; (c) moderate-risk residential; (d) high-risk residential; and (e) maximum-risk residential. § 39.01(59)(a)-(e), Fla. Stat. (Supp.1996) (current version at § 985.03(45)(a)-(e), Fla. Stat. (1997)).
[5] The district court reasoned in L.R.J. v. State that "community control is not a `restrictiveness level' and that section 39.052(4)(e)3, Florida Statutes [authorizing the trial court to deviate from the DJJ's recommended restrictiveness level], does not apply where the change is from community control to commitment." 706 So.2d 72, 73 (Fla. 1st DCA 1998); see also, S.R. v. State, 683 So.2d 576 (Fla. 1st DCA 1996) ("We reverse and remand because section 39.052(4)(e)2., Florida Statutes, unequivocally requires the court to receive and consider a recommendation from the Department as to restrictiveness level before ordering a commitment.").
[6] Level six corresponds to moderate-risk residential. See B.H. v. State, 645 So.2d 987, 994 (Fla. 1994). See J.M. v. State, 677 So.2d 890 (Fla. 3d DCA 1996), wherein Judge Cope explained:

The 2-4-6-8 numbering terminology is a holdover from the original 1990 rule which first promulgated restrictiveness levels. See B.H. v. State .... The restrictiveness levels were subsequently enacted into statute without the original numbers. See § 39.01(61), Fla. Stat. (1993).
Id. at 894 n. 7 (Cope, J., dissenting).
[7] § 39.052(4)(e)3., Fla. Stat. (Supp.1996)(current version at § 985.23(3)(c), Fla. Stat. (1997)).
[8] Absent a clearer definition of community control within the context of subsection (4)(e)2., and due to the penal nature of the statute in committing minors to residential programs, the statutory rules of construction require that we strictly construe this statute. Perkins v. State, 576 So.2d 1310, 1312 (Fla.1991). Where a statute is susceptible to differing constructions, as it is in this case, the statute must be construed most favorably to the accused. See § 775.021(1), Fla. Stat. (1995).
[9] See also J.L.T. v. State, 23 Fla. L. Weekly D1650, 717 So.2d 69 (Fla. 1st DCA 1998); J.P.C. v. State, 712 So.2d 1229 (Fla. 1st DCA 1998); L.A.S. v. State, 23 Fla. L. Weekly D789, 720 So.2d 534 (Fla. 1st DCA 1998); L.R.J. v. State, 706 So.2d 72, 73 (Fla. 1st DCA 1998); P.A. v. State, 23 Fla. L. Weekly D429, ___ So.2d ___, 1998 WL 31505 (Fla. 1st DCA Jan.30, 1998); A.L.W. v. State, 22 Fla. L. Weekly D2227, ___ So.2d ___, 1997 WL 578660 (Fla. 1st DCA Sept.16, 1997), approved, 23 Fla. L. Weekly S191, 717 So.2d 913 (Fla. 1998); M.J.P. v. State, 22 Fla. L. Weekly D2090, ___ So.2d ___, 1997 WL 536011 (Fla. 1st DCA Sept.3, 1997), approved, 23 Fla. L. Weekly S192, 717 So.2d 459 (Fla. 1998); A.L. v. State, 22 Fla. L. Weekly D1834, ___ So.2d ___, 1997 WL 423087 (Fla. 1st DCA July 29, 1997), approved on other grounds sub nom. State v. T.M.B., 716 So.2d 269, 23 Fla. L. Weekly S180 (Fla. 1998); K.A.S. v. State, 22 Fla. L. Weekly D1823, ___ So.2d ___, 1997 WL 405957 (Fla. 1st DCA July 22, 1997), approved on other grounds sub nom. State v. T.M.B., 716 So.2d 269, 23 Fla. L. Weekly S180 (Fla. 1998); R.A.M. v. State, 695 So.2d 1308 (Fla. 1st DCA 1997), approved on other grounds sub nom. State v. T.M.B., 716 So.2d 269, 23 Fla. L. Weekly S180 (Fla. 1998); R.D. v. State, 22 Fla. L. Weekly D1235, ___ So.2d ___, 1997 WL 240913 (Fla. 1st DCA May 13, 1997), approved on other grounds sub nom. State v. T.M.B., 716 So.2d 269, 23 Fla. L. Weekly S180 (Fla. 1998); O.M. v. State, 689 So.2d 1265 (Fla. 1st DCA 1997); K.Y.L. v. State, 685 So.2d 1380 (Fla. 1st DCA 1997); G.S.C. v. State, 22 Fla. L. Weekly D1672, ___ So.2d ___, 1997 WL 370364 (Fla. 1st DCA July 7, 1997), approved on other grounds sub nom. State v. T.M.B., 716 So.2d 269, 23 Fla. L. Weekly S180 (Fla. 1998).
[10] But see T.M.B. v. State, 689 So.2d 1215 (Fla. 1st DCA 1997), approved, 716 So.2d 269, 23 Fla. L. Weekly S180 (Fla. 1998), wherein the trial court apparently departed from an initial report recommending commitment to a moderate-risk restrictiveness level program without seeking an additional recommendation. The trial court committed the juvenile to a high-risk restrictiveness level program, providing no reasons for its departure. The First District reversed the order of commitment, holding that the court must provide written reasons for departure from the recommendation. However, the district court did not address whether the court erred in departing from the initial recommendation and it is not clear whether the report in this case was the initial predisposition report or the second recommendation under section 39.052(4)(e)2.

In a similar vein, J.M. v. State, 677 So.2d 890 (Fla. 3d DCA 1996), and A.K. v. State, 713 So.2d 1031 (Fla. 5th DCA 1998), both hold that the trial court can disregard the DJJ's predisposition recommendation and order commitment as long as the court provides reasons supported by a preponderance of the evidence. In J.M., HRS filed a predisposition with the court that recommended a level-two moderate community control program. The trial court adjudicated the juvenile delinquent and ordered commitment in a level-four low risk residential program. The Third District held that the juvenile was entitled to a new disposition hearing because the trial court's stated reasons for the departure from HRS's recommendation were not established by the preponderance of the evidence. Id. at 892. In A.K., the DJJ filed a predisposition report, recommending community control. The trial court adjudicated the juvenile delinquent and ordered a level-eight commitment without providing reasons for disregarding the DJJ's initial recommendation. The Fifth District held that the disposition order must be set aside because no reasons were given for the court's departure from the DJJ's recommendation. Both cases focus on the requirement under subsection 39.052(4)(e)3. requiring stated reasons for departure and it is not clear whether the report in each case was the initial predisposition report or the second recommendation under section 39.052(4)(e)2.
[11] However, the statute does not define "commitment" and a review of the legislative history of the statute does not shed any additional light on the definition of community control within the meaning of section 39.052. This ambiguity is not resolved by the majority opinion's reference to "minimum-risk nonresidential," the lowest restrictiveness level under section 39.01(59), which includes within its definition programs such as "community counselor supervision programs." Unfortunately, the statute does not define "community counselor supervision programs" and there is scant case law on this issue.

Although not directly on point, T.M. v. State, 701 So.2d 1221 (Fla. 1st DCA 1997), provides some insight. There, the minor pleaded guilty to aggravated assault with a firearm and was placed in an intensive community supervision program, in accordance with section 790.22(9)(a), Florida Statutes (1997), with the proviso that if he violated that supervision he would be placed in a level VI residential program. Under section 790.22(9), "if the minor is found to have committed an offense that involves the use or possession of a firearm ... or an offense during the commission of which the minor possessed a firearm, and the minor is not committed to a residential commitment program of the Department of Health and Rehabilitative Services" the court shall order one of two sanctions depending on the number of offenses committed by the minor. On appeal, T.M. contended that he was, in effect, committed to a residential program. The First District disagreed. It held that because commit means "to place officially in confinement or custody" and because T.M. was not committed, and might never be committed, to a residential program, his placement in a supervision program did not amount to commitment in a residential program. 701 So.2d at 1222.
[12] See generally Woodgate Dev. Corp. v. Hamilton Inv. Trust, 351 So.2d 14, 16 (Fla.1977) ("Where possible, it is the duty of the courts to adopt that construction of a statutory provision which harmonizes and reconciles it with other provisions of the same act."); State v. Putnam County Dev. Auth., 249 So.2d 6, 10 (Fla.1971) ("We cannot charge the Legislature with enacting contradictory provisions in the same Act. It is our duty to read the several provisions of the Act as consistent with one another rather than in conflict, if there is any reasonable basis for consistency.").