SHAW, Justice.
We have for review E.D.P. v. State, 23 Fla. L. Weekly D348, — So.2d -, 1998 WL 25483 (Fla. 1st DCA Jan.27, 1998), wherein the First District Court of Appeal certified the following question:
DOES THE TRIAL JUDGE, ACTING AFTER A DISPOSITION HEARING AND BASED ON SPECIFIC REASONS, HAVE THE AUTHORITY TO REJECT THE DEPARTMENT’S COMMUNITY CONTROL RECOMMENDATION WITHOUT REMANDING THE CASE TO THE DEPARTMENT FOR AN ALTERNATIVE RECOMMENDATION?
Id. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the affirmative and quash E.D.P.
E.D.P. pled guilty to possession of marijuana and the trial court adjudicated him delinquent. The Department of Juvenile Justice (DJJ) recommended community control in its predisposition report (PDR), but the trial court rejected the recommendation and committed E.D.P. to the custody of the DJJ at the “low-risk residential”[1] restrictiveness level.[2] The trial court explained its reasons for ordering a residential program in lieu of the DJJ’s community control recommendation: [3]
*1145 THE COURT: Come forward, [E.D.P.]. They’re recommending community control. That is not acceptable to me. I intend to go with a Level 4 commitment to the Step or Stop camp for boys followed by JMI. In Case 97-3295, and the reason I’m deviating from the recommendation, is because this possession of marijuana was at school, during the daytime or nighttime?
THE CHILD: Daytime.
THE COURT: And on top of that, it was at the worst alternative school we have, Gran Park Alternative School. That’s the highest alternative school, which means you’ve been kicked out of the regular school.
[[Image here]]
THE COURT: ... So you’re in the worst alternative school, at which point where these drugs were obtained. In addition to that, there is some indication he might be related to some gang of some kind.
[[Image here]]
MR. SLAMA [DEFENSE COUNSEL]:
... We would object, Judge, from departing recommendation from DJJ as well as the staffing committee. It appears that— and I understand the Court’s concern. There is some comment in there about some gang or what have you.
He is in the eighth grade and in his grades he seems to be doing well. My understanding is that his overall score was an 85, which is the equivalent of a “B” average. He is an intelligent child and does understand that he does have a problem which he’s willing to deal with.
In addition, he does have a strong family background, which I think could help him with this. It also says in here on the positive side, that he’s not a problem at home. They do engage in family activities and he’s not a problem to his parents. I think there is something, Judge, that there is something to work with.
THE COURT: Okay. After commitment, I won’t require him to go to JMI [Jacksonville Marine Institute]. I’ll permit him to remain at the Gran Park School, of course, on the condition there [are] no referrals or anything.
Once there is a referral of any kind, even if it doesn’t amount to a crime, I’m pulling you out.
THE CHILD: Yes, sir.
[[Image here]]
THE COURT: All right. You have some potential if you decide you want to stop violating laws.
Okay. Mr. [E.D.P.], I’m going to adjudicate you to be delinquent of the offense of possession of marijuana, less than 20 grams. I’m going to commit you to the Department of Juvenile Justice at Level 4, low risk, for placement in either the Step camp or Stop camp for boys. Those are about 30 to 40-day programs.
I’m going to place you on post commitment community control. That means after your commitment is over and [you’re] back at home, the conditions of your community control are:
You can have no further violations of law of any kind. You must obey all the reasonable demands of every authority in your life, whether it’s your father or your mother, or the police or your juvenile justice counselor or any teacher, dean or principal or any employer. Any reasonable demand these individuals make on your life I’m going to hold you personally accountable to obey everything they tell you, whether you like it or not.
Is that clear?
THE CHILD: Yes, sir.
THE COURT: I’m going to order you to maintain your enrollment in school, that your parents decide you will attend. You can have no unexcused absences to any class, no unexcused tardies, no suspensions no referrals for misbehavior.
You’re going to have a 6:00 p.m. curfew, sir. In fact, I’m going to put you on what we call pre and post commitment community control before your commitment starts and then after its over, it’s the same type of probation in community control.
I’m going to require you to be inside your house every night by 6 o’clock p.m., not a minute later. I’m going to order your parents to enforce the curfew. That means if he violates, you’re under an order to report it. If you don’t, you could face contempt proceedings yourselves. That is, the parents can.
There are four exceptions to this 6:00 p.m. curfew. He can be out past 6 o’clock *1146 if he is out with you or his mother somewhere in your personal company at all times. He can get a job and he can work past 6 o’clock. He can go to a school function past 6:00 if his attendance is required, and he can go to a church activity past 6:00.
But when the work, church or school function is over with, whatever time that is, you’ve got 30 minutes to leave that facility and get to the front door of your parents’ house.
Is that clear?
THE CHILD: Yes, sir.
[[Image here]]
MR. SLAMA: Judge, just for the record so our record is clear, even though you modified the sentence, not including JMI, we would still object to the sentence as opposed.
THE COURT: I understand.
MR. SLAMA: Thank you.
The district court reversed the order of commitment, holding that the trial court must remand the case to the DJJ for a second recommendation which specifically identifies a restrictiveness level,[4] and certified the above question.[5] The State argues that this two-recommendation process is redundant and wasteful-of judicial resources. We agree.
Section 39.052, Florida Statutes (Supp. 1996), governs disposition proceedings in juvenile delinquency cases and states in pertinent part:
(4)DISPOSITION HEARING FOR DELINQUENCY CASES. — When a child has been found to have committed a delinquent act, the following procedures shall be applicable to the disposition of the case:
(a) At the disposition hearing, the court shall consider a predisposition report regarding the suitability of the child for disposition other than by adjudication and commitment to the department. The predisposition report shall be the result of the multidisciplinary assessment when such assessment is needed, and of the classification and placement process, and it shall indicate and report the child’s priority needs, recommendations as to a classification of risk for the child in the context of his or her program and supervision needs, and a plan for treatment that recommends the most appropriate placement setting to meet the child’s needs with the minimum program security that reasonably ensures public safety. ...
[[Image here]]
(e)l. If the court determines that the child should be adjudicated as having committed a delinquent act and should be committed to the department, such determination shall be in writing or on the record of the hearing. The determination shall include a specific finding of the reasons for the decision to adjudicate and to commit the child to the department, including any determination that the child was a member of a criminal street gang.
2. If the court determines that commitment to the department is appropriate, the intake counselor or case manager shall recommend to the court the most appropriate placement and treatment plan, specifically identifying the restrictiveness level most appropriate for the child. If the court has determined that the child was a member of a criminal street gang, that determination shall be given great weight in identifying the most appropriate restrictiveness level for the child. The court shall consider the department’s recommendation in making a commitment decision.
*1147 3. The court shall commit the child to the department at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons which establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department.
Id. (emphasis added). The Second District Court of Appeal addressed this issue in D.L.B. v. State, 707 So.2d 844 (Fla. 2d DCA 1998), wherein the trial court rejected the DJJ’s community control recommendation and imposed a level-six restrictiveness commitment. The Second District, in D.L.B., disagreed with the First District’s interpretation of the statute in the present case:
The statute provides that, before committing the juvenile, the court must consider the restrictiveness level recommended by the Department. ...
... We do not believe' the statute requires the court, once it has already rejected the Department’s non-commitment recommendation, to then ask the Department for a second recommendation. A request for a second recommendation would seem particularly unnecessary in view of section 39.052(4)(e)3., Florida Statutes (1995), the next paragraph of the statute, which allows the court to reject the Department’s restrictions level recommendation provided that the court state for the record the reasons for its deviation from the Department’s recommendation. For these reasons, we find ... no error in the court’s refusal to request a second recommendation from the Department.
Id. at 845.[6] We agree with the Second District’s analysis and conclusion. We further note that community control is a restrictiveness level recommendation within the minimum-risk nonresidential category:
Minimum-risk nonresidential. — Youth assessed and classified for placement in programs at this restrictiveness level represent a minimum risk to themselves and public safety and do not require placement and services in residential settings. Programs or program models in this restrictiveness level include: community counselor supervision programs, special intensive group programs, nonresidential marine programs, nonresidential training and rehabilitation centers, and other local community nonresidential programs.
§ 39.01(59)(a), Fla. Stat. (Supp.1996) (emphasis added).
In the present case, the trial court complied with the statute’s requirement to consider the DJJ’s recommendation and its authorization to .reject the recommendation and “order placement at a different restrictiveness level.”[7] Accordingly, we answer the certified question in the affirmative and quash the decision below.
It is so ordered.
HARDING, C.J., and OVERTON and WELLS, JJ., concur.
ANSTEAD, J., dissents with an opinion, in which' KOGAN and PARIENTE, JJ., concur.

. Section 39.01(59)(b) defines "low-risk residential” as:
Youth assessed and classified for placement in programs at this level represent a low risk to themselves and public safety and do require placement and services in residential settings. Programs or program models in this restrictiveness level include: Short Term Offender Programs (STOP), group treatment homes, family group homes, proctor homes, and Short Term Environmental Programs (STEP).
§ 39.01(59)(b), Fla. Stat. (Supp.l996)(current version at§ 985.03(45)(b), Fla. Stat. (1997)).

. " 'Restrictiveness level’ means the level of custody provided by programs that service the custody and care needs of committed children." Id. § 39.01(59)(current version at § 985.03(45), Fla. Stat. (1997)).

.Community control does not require commitment to the custody of the DJJ:
"Community control” means the legal status of probation created by law and court order in cases involving a child who has been found to have committed a delinquent act. Community control is an individualized program in which the freedom of the child is limited and the child is restricted to noninstitutional quarters or restricted to the child’s home in lieu of commitment to the custody of the Department of Juvenile Justice.
§ 39.01(16), Fla. Stat. (Supp.1996) (emphasis added) (current version at § 985.03(12), Fla. Stat. (1997)).

. Section 39.01(59) lists and defines five restrictiveness levels: (a) minimum-risk nonresidential; (b) low-risk residential; (c) moderate-risk residential; (d) high-risk residential; and (e) maximum-risk residential. § 39.01(59)(a)-(e), Fla. Stat. (Supp. 1996) (current version at § 985.03(45)(a)-(e), Fla. Stat. (1997)).

. The district court reasoned in L.R.J. v. State that "community control is not a 'restrictiveness level’ and that section 39.052(4)(e)3, Florida Statutes [authorizing the trial court to deviate from the DJJ’s recommended restrictiveness level], does not apply where the change is from community control to commitment.” 706 So.2d 72, 73 (Fla. 1st DCA 1998); see. also, S.R. v. State, 683 So.2d 576 (Fla. 1st DCA 1996) ("We reverse and remand because section 39.052(4)(e)2., Florida Statutes, unequivocally requires the court to receive and consider a recommendation from the Department as to restrictiveness level before ordering a commitment.”).

. Level six corresponds to moderate-risk residential. See B.H. v. State, 645 So.2d 987, 994 (Fla.1994). See J.M. v. State, 677 So.2d 890 (Fla. 3d DCA 1996), wherein Judge Cope explained:
The 2-4-6-8 numbering terminology is a holdover from the original 1990 rule which first promulgated restrictiveness levels. See B.H. v. State .... The restrictiveness levels were subsequently enacted into statute without the original numbers. See § 39.01(61), Fla. Stat. (1993).
Id. at 894 n. 7 (Cope, J., dissenting).

. § 39.052(4)(e)3., Fla. Stat. (Supp.l996)(current version at § 985.23(3)(c), Fla. Stat. (1997)).