MAY, J.
A juvenile appeals the trial court’s disposition order entered after having pled guilty to a violation of probation. At issue is whether a trial court may disagree with the disposition recommended by the Department of Juvenile Justice [DJJ] when that disagreement rests solely on the same factors considered by the DJJ in making its recommendation. We hold that a trial court judge has that discretion. The disposition order is affirmed.
The State initially charged C.T. with a single count of battery on October 31, 2000. This battery occurred on school grounds when C.T. and another youth ran up behind the victim and punched the victim in the face. On December 8, 2000, she entered into a written plea agreement and was placed on community control.
C.T. violated community control and was placed on secure home detention on May 15, 2001. Three days later, a formal violation of probation was filed, which alleged that C.T. had violated curfew, failed to make weekly telephone contact with the probation officer, and had become truant. Less than two weeks later, C.T. failed to report to the detention center to sign her home detention contract, which caused the filing of an affidavit of violation of supervision on May 31, 2001. She was taken into custody on June 5, 2001.
On June 6, 2001, the trial court released her on electronic monitoring. On July 3, 2001, the probation officer filed another affidavit for violation of probation because of C.T.’s failure to comply with the conditions of electronic monitoring. She was again taken into custody, and placed in secure detention. She pled guilty to the violation of probation and was released on electronic monitoring pending final disposition. She absconded, causing another violation of supervision to be filed. On July 20, 2001, she was taken into custody, spent five days in secure detention, and was released on electronic monitoring.
The DJJ prepared a predisposition report. It recommended that C.T. be committed to a moderate risk residential program. The report indicated that the DJJ had considered the following factors: (1) C.T. was beyond parental control; (2) she was a flight risk; (3) she had violent tendencies; (4) all of her family members had delinquent histories; and (5) she had poor school attendance.
On August 1, 2001, the trial court conducted the final disposition hearing. C.T.’s grandmother and legal guardian testified that C.T.’s behavior was out of control and that she “hung out” with a drug dealer. The prosecutor did not object to the DJJ’s recommendation, but added that a high risk level program might be better suited to her needs.
The. trial court ordered that C.T. be placed in a high risk residential treatment program rather than the moderate risk program recommended by the DJJ. In doing so, the trial court stated:
Based on the PDR, the grandmother ... who has had the responsibility of raising this child, has indicated that for the past two years the child’s behavior has become beyond her control. Her statements in court today bear that out without any questions. She has difficulty even getting this child to attend school. Apparently, based on grandmother, she *872 leaves home and she goes and she hangs out with some drug dealer. Her school record also provides a basis for the court’s departure and the records need not be repeated here in court, it is as reflected, the Court has relied upon it as it is reflected in the PDR. According to the PDR, the child has been placed on probation and has not made one iota of improvement, has continued to demonstrate negative behavior which has resulted in her violations of probation. According to the pre-disposition report, she is a flight risk, that’s borne out by the PDR. There have been pick up orders for absconding, I placed her on the monitor, she violated the monitor, gone for a week, no one knew where she was. According to the PDR, she also has violent tendencies. Flight risk, violent tendencies indicates to this court that moderate risk residential program, these two factors alone just demonstrate to this court she shouldn’t be in a moderate risk program, she should be in a high risk residential program.
From this disposition order, C.T. appeals.
The resolution of this case rests on the language of section 985.2S(3)(c), Florida Statutes (2001). It provides:
The court shall commit the child to the department at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons which establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department.
(Emphasis added).
The statute literally prevents a court from “disregarding” the DJJ’s recommendation, not “disagreeing” with it, unless the trial court articulates its reasons, which are supported by a preponderance of the evidence. However, this court as well as others have found the terms to be synonymous in the context of this statute. See KN.M. v. State, 793 So.2d 1195 (Fla. 5th DCA 2001) (child’s lack of remorse is insufficient ground to allow trial court to disagree with DJJ’s recommendation); A.C.N. v. State, 727 So.2d 368 (Fla. 1st DCA 1999) (trial court’s disregard of the DJJ’s recommendation not supported by a preponderance of the evidence); S.L.K v. State, 776 So.2d 1062 (Fla. 4th DCA 2001) (failure to specify sufficient reasons to support departure from the DJJ’s recommendation warrants reversal). Still, other case law has added a prerequisite for deviating from the DJJ’s recommended disposition — reference to the characteristics of the restrictiveness level vis-a-vis the needs of the child. See, e.g., A.G. v. State, 737 So.2d 1244 (Fla. 5th DCA 1999).
The statute in question clearly provides that a trial court “may order placement at a different restrictiveness level” than that recommended by the DJJ. And, only when the court “disregards” the “assessment of the child and the restrictiveness level recommended by the department,” does the statute require the court to state reasons, supported by a preponderance of the evidence. Yet, interpretation of this provision has evolved. Disregard has been interpreted to mean disagree; and when that occurs, the trial court must state its reasons. Nevertheless nowhere in the existing legislation is there a requirement that the trial court rely on factors other than those considered by the DJJ. And, we will not legislate them into the statute. Holly v. Auld, 450 So.2d 217 (Fla.1984) (citing Am. Bankers Life Assurance Co. of Fla. v. Williams, 212 So.2d 777 (Fla. 1st DCA 1968)). That is a matter for our legislature.
Each day, trial judges assigned to delinquency divisions are asked to address *873 family and societal problems that used to be dealt with by families, communities, and schools. They are called upon to be arbiters of justice. They have the opportunity to witness the demeanor of the juveniles and families who appear before them, the interaction between the family members, and to discern the intricacies of the personalities involved. Trial judges have been given discretion to disagree with DJJ recommendations. When they do, they must set forth reasons supported by a preponderance of the evidence. And, when they follow those rules, we will give them deference.
In this case, the trial court disagreed with the DJJ recommendation. The trial court heavily relied upon the factors outlined in the DJJ’s predisposition report in explaining why it disagreed with the conclusion reached by the DJJ. C.T. argues that the trial court’s reliance upon the same factors considered by DJJ in making its recommendation must be “de jure” insufficient. We disagree.
This trial court specifically stated on the record the factors it considered in disagreeing with the recommendation. It merely came to a different conclusion in weighing the factors considered by the DJJ. In addition, the trial court clearly took into consideration testimony from the grandmother and had the opportunity to observe C.T. in the courtroom. The facts of this case demonstrate that time and again, this trial court attempted to give C.T. a chance on community supervision. These opportunities were consistently abused by C.T.
The statute does not require the trial court to find or invent reasons above and beyond those relied upon by the DJJ to reach a different conclusion. Rather, the statute requires the trial court to articulate why it disagrees with the recommendation. In this case, the trial court did just that. We will not require more than the statute requires. A trial court may rely upon the same factors and reach a different conclusion as long as it articulates the basis for disagreeing with the recommendation.
AFFIRMED.
GUNTHER and STEVENSON, JJ„ concur.