STONE, J.
We affirm an order of juvenile disposition committing J.S. to a high risk residential facility, an upward departure from the recommendation of the Department of Juvenile Justice (the department). J.S. contends, in part, that the court’s reasons for departure were not based on competent, substantial evidence.
J.S. entered a plea of no contest to charges of robbery and attempted robbery and was adjudicated delinquent. The evidence indicated that J.S., a sixteen-year-old eighth grader, approached three sixth graders and asked them for their money. When they told him they did not have any money, J.S. ordered them to get some and turn it over to him the next day or he would beat them up. The next day, one of the three boys brought J.S. the dollar he had demanded.
At a disposition hearing, the court considered the department’s pre-disposition report. The report indicated that J.S. had no criminal record and was an average student, but had dropped out of school and enrolled in a GED program after his arrest. The report further noted that since being arrested on the charges in this case, the court had issued-two pick-up orders. J.S. had failed to appear on one occasion, and on another, had absconded from home detention.
The report indicated that J.S.’s father was in prison, he had not seen his biological mother in two years, and his stepmother did not want him to return home because, among other reasons, he had allegedly threatened to harm her and her two children. J.S. denied these allegations. Based on this evidence, the department recommended that J.S. be placed on probation.
At the hearing, J.S.’s stepmother asked the court not to let J.S. return home with her. When J.S. responded that his stepmother just wanted him out of her house, J.S.’s stepsister was asked to testify to corroborate her mother’s allegations. She recounted a specific incident in which J.S. told her, “if there’s going to be arguing in this house, I’m going to slash you and your mom’s and your brother’s throat.” She said that J.S. often threatened her.
■ After reading the pre-disposition report, the court declined tó adopt the department’s recommendation, stating, “I don’t think [probation is] appropriate in this case, not if we’re ever going to help this young man.... I’ve had a chance to listen to the stepmother and ... read what she has to say.” The court added that returning J.S. to the stepmother’s home was not a viable option.
Based on the evidence before it, the court decided boot camp, and not probation, would be the best place for J.S. In response, the prosecutor suggested, “because there really isn’t any place to go now, do you want to commit him to a high risk, which would keep him in detention, and then allow the Department to place him in the boot camp?” This suggestion was approved by the court.
Initially, we note that section 985.23, Florida Statutes (2000), expressly affords the trial court the discretion to depart from the department’s recommendation. This court has recently recognized that the court may do so based on factors contained *880 in the pre-disposition report, notwithstanding that those factors were already considered by the department in arriving at its recommendation. See C.T. v. State, 819 So.2d 869 (Fla. 4th DCA 2002).
Here, the court stated its reasons for the commitment imposed. The court said,
[h]e’s not in school .... it’s a totally dis-stable situation. And he has serious charges. The Department recommended he be put on probation, notwithstanding all this other stuff, ... about the family dynamics.... I’m concerned about doing something for [J.S.] that will indicate the seriousness of what he has done ... that involved these victims and the need to put him somewhere that it will do him some good. And I think the boot camp would be ideal for him if we can get him in the boot camp. And that’s — that would be my recommendation. They [DDJ] recommend probation. I don’t think that’s appropriate in this case, not if we’re ever going to help this young man. If we put him on probation, where would he go, with his mother? ... Who we can’t even locate?
In response, defense counsel expressed the view that the court was wrongfully punishing J.S. based on his familial circumstances. The trial court replied, “Well, I’m not punishing him for that. I made it very clear in the record, his punishment is based on his record and what he has done. Mainly what he has done ... [T]hat’s what the Department’s recommendation is, probation. But I don’t agree with that.”
We cannot conclude from the record that J.S. was committed to the higher-level pf commitment simply because his stepmother did not want him and neither of his biological parents were available to claim responsibility for him.[1] Although we acknowledge such to be an insufficient basis for departure, the court made it apparent that it was not imposing the higher level of commitment because of the difficulty in finding adult supervision for J.S.
We hold that the trial court’s stated reasons for disregarding the department’s recommendation were supported by competent, substantial evidence and affirm the disposition.
POLEN, C.J. and GROSS, J., concur.

. The court was aware that the Department of Children and Families was otherwise dealing with this case in a dependency context.