PER CURIAM.
K.S., adjudicated delinquent upon her violation of probation, appeals the disposition order on grounds that the trial court erred in committing her to a high-risk residential facility, a departure from the Department of Juvenile Justice’s (DJJ) recommendations. We affirm.
In ordering that K.S. be placed at a restrictiveness level higher than that recommended by the DJJ, the trial court stated its reasons for disagreeing with the DJJ recommendation.
Initially, K.S. pled guilty to the charge of battery on a police officer. The charge stemmed from an incident at middle school in which a school police officer tried to stop K.S. from leaving school grounds. K.S. struggled with the officer, kicking and hitting in an attempt to free herself from the officer’s restraint.
The court placed K.S. on probation. Two months later, K.S. violated the conditions of her probation by absconding from her mother’s home. The pre-disposition report (PDR) notes an additional probation violation for an incident in which K.S. was suspended from school for being disruptive. The PDR was amended to include the second violation of probation but the only change in recommendation was that K.S. be adjudicated.
Although the DJJ had initially recommended that K.S. be placed on probation and that adjudication be withheld, the DJJ representative at the disposition hearing acknowledged that probation would not be an effective disposition. The DJJ’s recommendation contained in the PDR, according to its representative, was based on the *351 assumption that K.S. would successfully complete the Pace program. However, she had been absent for an entire month of the program and had been picked up for shoplifting. When the judge asked for the DJJ’s comments, its representative told him that, “as far as the probation is concerned ... we’ve pretty much tried every means that we can in trying to work with her.”
The trial court gave the following reasons for committing K.S. to a high-risk residential facility (level 8):
1) The mother is unable to control her child.... For instance, K.S. leaves home for extended periods in the company of older men which is dangerous.
2) Her school records and attendance, as reflected by the PDR indicate that she is a flight risk.
3) She has a “history of supervision, her noncompliance, her repeated violations.”
The trial court has the discretion to order placement of a delinquent child at a restrictiveness level higher than that recommended by the DJJ. Section 985.23, Florida Statutes, in outlining a series of steps a court must take before determining placement for a delinquent child, provides that where the court finds that the child is suitable for adjudication and commitment to the DJJ, it must state reasons for its findings. § 985.23(3)(a), Fla. Stat. (2001). Although courts are encouraged to follow the DJJ’s recommendation, they are given the discretion to disregard it provided the court can state reasons for doing so. § 985.23(3)(c), Fla. Stat. (2001).
Here, the DJJ representative, speaking for the department, told the court “as far as the probation is concerned ... we’ve pretty much tried every means that we can in trying to work with her.” Such a comment, alone, would be a basis for imposing a higher restrictiveness level.
K.S. argues that subsection (3)(b), which requires a DJJ recommendation “specifically identifying the restrictiveness level most appropriate for the child,” was not satisfied by the comments of the DJJ representative. Further, she argues that the court’s comment does not explain why the juvenile’s needs would be met by placement in a level 8 restrictiveness program rather than in a program with a lower level of restrictiveness.
In C.T. v. State, 819 So.2d 869, 871 (Fla. 4th DCA 2002), review granted by, SC 02-1811, 835 So.2d 265 (Dec. 5, 2002), this court recognized that a juvenile judge may disagree with the DJJ based on the evidence contained in the pre-disposition report and affirmed the court’s upward departure from the DJJ recommendation. Id. at 873 (“A trial court may rely upon the same factors and reach a different conclusion as long as it articulates the basis for disagreeing with the recommendation.”); see also K.W. v. State, 818 So.2d 665 (Fla. 4th DCA 2002); E.W. v. State, 818 So.2d 662 (Fla. 4th DCA 2002); AW. v. State, 818 So.2d 665 (Fla. 4th DCA 2002); A.T. v. State, 819 So.2d 873 (Fla. 4th DCA 2002). In S.L.K. v. State, 776 So.2d 1062, 1064 (Fla. 4th DCA 2001), we indicated, however, that such placement, even where supported by the preponderance of the evidence, as required, must reference the characteristics of the restrictiveness level imposed vis-a-vis the juvenile.
We also recognize that in E.S.B. v. State, 822 So.2d 579 (Fla. 1st DCA 2002), the First District relied on this court’s holding in C.T., but reversed the trial court’s disposition order because its reason for disagreeing with the DJJ and imposing a higher restrictiveness level, i.e., her “long prior,” was insufficient. Id. at 581. The trial court failed to “explain how or why a *352 ‘long prior’ record might lead the trial court to impose a moderate risk commitment.” The First District admitted that it could speculate as to why the court imposed the commitment level it did, but reasoned, “such speculation cannot be the basis of appellate review.” Id.; accord S.S.M. v. State, 814 So.2d 1234, 1235 (Fla. 5th DCA 2002)(vacating the juvenile court’s order and remanding because the court had not referenced the characteristics of the restrictiveness level and the needs of the child).
Although we are concerned that our comment in S.L.K may go a step beyond the explicit statutory requirement, we note that it was dicta and did not purport to set a standard going beyond that specified by statute. Section 985.23, Florida Statutes (2001), does not require the court to explain why it is imposing a different restrictiveness level by articulating the “characteristics of the restrictiveness level imposed vis-a-vis the needs of the juvenile.” This is a requirement born of judicial interpretation, albeit one which this court apparently reiterated in S.L.K. S.L.K., however, was decided on different grounds, as there, we concluded that the trial court’s reasons were not supported by the record. 776 So.2d at 1064.
Further, the reasons given by this trial court, here, included the child’s exposure to danger by her conduct in leaving home for extended periods of time in the company of older men, that she is a flight risk, and her history of repeated violations of her community supervision. A review of section 985.03(45), Florida Statutes (2001), provides the court with information concerning the extent to which a commitment program is secure. “High-risk” programs “shall not allow youth to have access to the community. Facilities are hardware-secure with perimeter fencing and locking doors.” “Moderate-risk” programs “may allow youth to have supervised access to the community. Facilities are either environmentally secure, staff secure, or are hardware-secure with walls, fencing, or locking doors.” § 985.03(45)(b), Fla. Stat. Thus, the reasons stated by the trial court in this case, i.e., flight risk, and her continued exposure to danger by her conduct, inherently explain why the characteristics of the restrictiveness level, i.e., a physically locked facility, are necessary to “secure” the juvenile for her own protection as well as that of the public.
Deferring, as we should, to the discretion of the trial court, we conclude that the trial court’s findings and reasons for placement are supported by the record and are sufficient under the statute. As we do not deem our opinion factually in conflict with E.S.B., we decline to certify a conflict.
STONE, HAZOURI, and MAY, JJ. concur.