862 So.2d 858 (2003)
A.W., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-4899.
District Court of Appeal of Florida, Fourth District.
December 10, 2003.
Carey Haughwout, Public Defender, and Alan T. Lipson, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Sue-Ellen Kenny, Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
A.W., adjudicated delinquent upon his violation of probation, appeals the disposition *859 order on grounds that the trial court erred in committing him to a high-risk residential facility which was a departure from the Department of Juvenile Justice's ("DJJ") recommendation. Because we find the trial court's departure was not supported by the evidence, we reverse and remand.
A.W. pled guilty to a charge of grand theft auto and was placed on probation. Another charge of burglary of a conveyance was nolle prossed. On April 4, 2002, an Affidavit/Petition for Violation of Probation was filed, alleging that A.W. failed to meet the conditions of his probation. Specifically, the affidavit stated that A.W. failed to perform sixty hours of community service work, failed to enroll in school, and failed to make weekly contact with his probation officer. The affidavit also stated that A.W. left his last known residence without first obtaining the consent of his probation officer. At the time, A.W. was supposed to be living with his mother, but his mother stated that A.W. was living with his father.
On April 23, 2002, A.W. entered into a plea agreement, pleading guilty to the violation of probation and leaving the disposition open. The DJJ filed a predisposition report ("PDR") on May 8, 2002. In the PDR, the DJJ recommended that A.W. be adjudicated delinquent and placed in a low-risk residential facility.
While awaiting his disposition hearing, another Affidavit/Petition for Violation of Probation was filed, alleging that A.W. violated his curfew. A hearing was eventually held for both violations of probation on October 2, 2002. The trial court dismissed the second Affidavit/Petition for Violation of Probation. The trial court, however, adjudicated A.W. delinquent and committed him to a high-risk residential program on the basis of the first violation of probation, finding that the high-risk residential program was the most appropriate placement for A.W. as it would provide him with "opportunities he needs in order for him to have any chance at any meaningful rehabilitation." The trial court found that the less restrictive placement recommended by the DJJ would not be sufficient.
The trial court stated that its reasons for departing from the DJJ's recommendation and imposing a more restrictive placement are (1) A.W. is not in school, is not receiving any vocational training and does not have a full-time job despite repeated encouragement that he participate in one of these, (2) A.W. is "an abuser of illegal substances, given his age," (3) A.W. "is on probation for a felony," (4) A.W. was "before the [c]ourt that day for violating ... probation," and (5) the trial court did not think that the mother had sufficient control over A.W. to motivate him to go to school, obtain full-time employment or avoid illegal substances. A.W. objected to the court's departure from the DJJ's recommendation and now appeals.
A trial court's decision to depart from the DJJ's recommendation is reviewed under an abuse of discretion standard and must be supported by competent and substantial evidence. S.L.K. v. State, 776 So.2d 1062, 1064 (Fla. 4th DCA 2001) (citing A.C.N. v. State, 727 So.2d 368, 369 (Fla. 1st DCA 1999)). Thus, while this Court has stated that a trial court is not required to articulate "the `characteristics of the restrictiveness level imposed vis-a-vis the needs of the juvenile,'" K.S. v. State, 835 So.2d 350, 352 (Fla. 4th DCA 2003), there still must be evidence in the record to support the trial court's departure. In this case, neither the trial court's findings nor the record sufficiently support A.W.'s commitment to a high-risk residential facility.
*860 The statute defines high-risk residential programs as:
[p]rograms or program models ... [which] are residential and shall not allow youth to have access to the community. Facilities are hardware-secure with perimeter fencing and locking doors. Facilities shall provide 24-hour awake supervision, custody, care, and treatment of residents. Youth assessed and classified for this level of placement require close supervision in a structured residential setting. Placement in programs at this level is prompted by a concern for public safety that outweighs placement in programs at lower commitment levels. The staff at a facility at this commitment level may seclude a child who is a physical threat to himself or herself or others. Mechanical restraint may also be used when necessary. The facility may provide for single cell occupancy.
§ 985.03(45)(c), Fla. Stat. (2002).
In other cases where the trial court committed the child to a high-risk residential facility, evidence existed in the record which supported the need to place the child in the high-risk facility. In K.S., this Court found that a child should be placed in a high-risk residential program, contrary to the DJJ's recommendation, where the child was a flight risk and her conduct exposed her to danger. 835 So.2d at 350, 352. The court stated that a high-risk facility was necessary to "`secure' the juvenile for her own protection as well as that of the public." Id. at 352. In C.T. v. State, 819 So.2d 869, 872 (Fla. 4th DCA 2002), this Court approved the placement of a child in a high-risk residential program, despite the DJJ's recommendation that she be placed in a moderate-risk program, because the child had violent tendencies and was a flight risk. The court in A.J. v. State, 826 So.2d 528, 529-31 (Fla. 5th DCA 2002), approved the placement of a child in a high-risk residential facility, rather than the moderate-risk program recommended by the DJJ, where the child had ten previous offenses, many of which were violent, and the child had previously been committed to a moderate-risk facility and had gone on to commit other offenses after being released from the program.
In this case, the record does not contain competent and substantial evidence that A.W. is a danger to the public and needs to be in a facility that is "hardware-secure with perimeter fencing and locking doors" with "24-hour awake supervision." See § 985.03(45)(c). Accordingly, we reverse and remand.
REVERSED and REMANDED.
FARMER, C.J., GUNTHER, and MAY, JJ., concur.