FARMER, C.J.
A sixteen-year old child was indefinitely committed to level 8 detention after being found guilty as an accessory after the fact on three counts of robbery and one count of attempted murder. In the commitment order, dated May 30, 2003, the trial Judge required periodic reports of the child’s progress and specified that “[t]he Court must give written approval before the child is released from any institutional commitment ... and must be given reasonable notice of any intention to release.”
The Department of Juvenile Justice (DJJ) scheduled the child for release in June 2004 and gave the trial court appropriate notice. On June 10, 2004, the court held a hearing on the proposed discharge of the child. The court file indicated generally positive evaluations during the child’s detention. The court received testimony during the hearing from the child’s primary counselor after commitment, from a substance abuse counselor, and from the child herself.
The trial Judge interrogated the child, asking her about a statement the child was said to have made in the presence of a detention worker to the effect that she and her co-defendants should have killed the victims of the robbery. The child denied making the comment, and her attorney objected to any consideration of it as hearsay. The trial Judge considered the hearsay admissible — an admission against penal interest? — and expressed disbelief in *475 the child’s denial. The child’s lawyer argued that the Court should not rely on the statement attributed to the child and should instead defer to the recommendation of DJJ.
In denying release from detention, the trial Judge explained:
“The program needs to address that. That’s a considerable concern to me, because that doesn’t show that anything has changed at all. These people were shot. Her boyfriend was the one that did the shooting. She made the statement that they should have just killed them. And she’s still in denial. I heard sworn testimony on it that she made that statement. And she is still at that same position. We need to address those issues before she can be released back into the community.”
The child now seeks a writ of habeas corpus for release from her detention. We deny the writ.
The child argues that the Judge erred in overruling the recommendation of DJJ. She acknowledges the absence of any case authority as to a committing Judge’s discretion to deny release in spite of a positive recommendation by DJJ. We take the time to write on the subject and provide such authority.
The child likens the Judge’s authority in regard to release from detention, before the maximum term has been served, to the Court’s initial authority in committing a juvenile offender to such detention. We think the analogy misplaced. We view the Court’s discretion in regard to release from detention already lawfully imposed to be at least as broad — perhaps even broader — than its discretion to impose such a commitment in the first place.
As we pointed out in C.T. v. State, 819 So.2d 869 (Fla. 4th DCA 2002), in imposing restrictive detention the trial Judge is free to disagree with DJJ’s recommendation, so long as the Judge does not simply ignore, it. When the Judge disagrees with a DJJ recommendation to impose a lesser form of punishment, the Judge must set forth the reasons for ordering a more restrictive level of detention. As Judge May explained for this court:
“They [trial judges] have the opportunity to witness the demeanor of the juveniles and families who appear before them, the interaction between the family members, and to discern the intricacies of the personalities involved. Trial judges have been given discretion to disagree with DJJ recommendations. When they do, they must set forth reasons supported by a preponderance of the evidence. And, when they follow those rules, we will give them deference.”
819 So.2d at 873.
 In specifying a specific punishment for the offense, the sentencing Judge is constrained by legal norms. A Judge is not free to impose punishment more severe — or, as here, more restrictive — than those legal norms provide. But releasing a child from an indeterminate sentence of the kind lawfully imposed in this case[1] *476 does not involve similar constraints. A child committed indefinitely under section 985.231 may be detained until the child reaches the age of 21. In this instance, that meant that this child was committed for a period of slightly more than 4 years.
Release from this indefinite period of commitment before the child reaches the age of 21 is not a matter of statutory right, or even of constitutional norms. It is entirely up to the committing judge. While it is surely appropriate for a judge to make an early release dependent to some extent on the progress of the child and her adjustment during detention, nothing in any statute makes even that necessary. The statute merely says that “[t]he court that committed the child may thereafter accept or reject the request.” § 985.231(l)(d), Fla. Stat. (2003). No new reasons are required to deny a request for early release because the continued detention of the child until she reaches 21 was authorized and justified by the original reasons for the commitment in the first place.
In considering whether to grant an early release of a child from indefinite commitment, the Judge is being asked to grant something in the nature of an early grace, a form of mercy, a remission or reprieve. So long as the Judge’s reasons for denying such a reprieve are not invidious, and they are not invidious here, there is every reason for a reviewing court to defer entirely to the trial Judge’s decision.
We disagree with the child’s argument that the statutes required the trial Judge to set forth specific reasons for denying early release. Nothing in section 985.231(l)(d) requires for release what section 985.23(3)(c) requires for imposing indefinite detention in the first instance. Plainly there is no statute obligating the trial Judge to state why she does not concur in a DJJ recommendation. And even if a statute did contain such a provision, we would deem the trial Judge’s explanation here at the conclusion of the hearing more than adequate.
WRIT DENIED.
KLEIN and STEVENSON, JJ., concur.

. See § 985.231(l)(d), Fla. Stat. (2003) (“Any commitment of a delinquent child to the Department of Juvenile Justice must be for an indeterminate period of time ... but the time may not exceed the maximum term of imprisonment that an adult may serve for the same offense. The duration of the child’s placement in a residential commitment program of any level shall be based on objective performance-based treatment planning. The child's treatment plan progress and adjustment-related issues shall be reported to the court each month. The child’s length of stay in a residential commitment program may be extended if the child fails to comply with or participate in treatment activities. The child’s *476 length of stay in such program shall not be extended for purposes of sanction or punishment. ... The child’s treatment plan progress and adjustment-related issues must be communicated to the court at the time the department requests the court to consider releasing the child from the residential commitment program. Notwithstanding s. 743.07 and this subsection, and except as provided in ss. 985.201 and 985.31, a child may not be held under a commitment from a court pursuant to this section after becoming 21 years of age. The department shall give the court that committed the child to the department reasonable notice, in writing, of its desire to discharge the child from a commitment facility. The court that committed the child may thereafter accept or reject the request.”).