HAZOURI, J.
W.W., adjudicated delinquent upon a plea of guilt to a charge of attempted burglary of an unoccupied dwelling, appeals the Disposition Order on grounds that the trial court erred in committing him to a high-risk residential facility which was a departure from the Department of Juvenile Justice’s (DJJ) recommendation. Because we find the trial court’s departure was not supported by the evidence, we reverse and remand.
W.W. pled guilty pursuant to a plea agreement to attempted burglary of an occupied dwelling and the trial court ordered a staffing and predisposition report by the DJJ.
On September 10, 2003, the DJJ issued its predisposition report (PDR) recommending probation and withholding of adjudication of guilt. The final disposition hearing was held on November 18, 2003, at which time the court disagreed with the *362 DJJ’s recommendation and adjudicated W.W. delinquent, ■ committing him to a high-risk residential program. • In making •this determination, the trial court stated the following reasons: •
The reasons for the decision of the Court, first, is his age. This absolutely will be the last time that the juvenile justice' system can impose any kind of meaningful rehabilitation for this child. It is hoped that in his commitment program he will take the time to achieve at least a GED or some education, or that he will learn some vocational skills and training which will sustain him in his adult life.
I’ve taken into consideration that he is before the Court on a burglary, which is a felony. Despite the fact that his mother loves him and cares for him, she has been unable to get him to attain at least an education or to maintain a job. He is before the Court next. He is not pursuing any education, nor does he have a job. He came to court misrepreséntíng, materially misrepresented his status regarding college, and he knew at the time he made those representations that they were indeed false. He made them solely to avoid the consequences of his charge.
This child is an abuser of illegal substances, by his own admission. Page 2 of the report indicates that he smokes marijuana frequently and drinks alcohol. He reported during the staffing that he smokes marijuana. He had smoked marijuana three days prior to the staffing. It is hoped that in his commitment program he will receive training, counseling for his substance abuse problems, for which he doesn’t see anything wrong or that he needs treatment.
In the disposition order, the court wrote the following considerations for deviating from the DJJ’s recommendation: (1) Age of child; (2) Nature of charge; (3) Mother unable to get child to obtain job or get some type of education; (4) Came to court with misrepresentations; (5) Abuses drugs by admission on page 2 of PDR.
W.W. argues that the trial court did not follow the requirements of section 985.23(3)(c), Florida Statutes (2003), by failing to articulate a valid basis supported by a preponderance of the evidence to justify its decision to depart from the DJJ’s recommendation of probation to a high-risk facility. The statute provides:
(c) The court shall commit the child to the department at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons which establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department. Any party may appeal the court’s findings resulting in a modified level of restrictiveness pursuant to this paragraph.
In C.T. v. State, 819 So.2d 869 (Fla. 4th DCA 2002), this court discussed what this statute provides. We held:
The statute in question clearly provides that a trial court “may order placement at a different restrictiveness level” than that recommended by the DJJ. And, only when the court “disregards!’ the “assessment of the child and the restrictiveness level recommended by the department,” does the statute require the court to state reasons, supported-by a preponderance of the evidence. Yet, interpretation of this provision has evolved. Disregard has.been interpreted to mean disagree; and when that occurs, the trial court must state its reasons. Nevertheless nowhere in the existing legislation is there a requirement that the trial court rely on factors other than those considered *363 by the DJJ. And, we will not legislate them into the statute.
Id. at 872.
W.W. relies on A.W. v. State, 862 So.2d 858 (Fla. 4th DCA 2003), arguing that a trial court that departs from the recommended commitment level and orders a child to a high-risk level eight program abuses its discretion if it is not based upon competent substantial evidence that the child is either a danger to the public or needs to be in a facility that is “hardware-secure.”
In A.W., the juvenile was before the court on two violations of probation that were filed after A.W. was placed on probation for grand theft auto. A burglary charge was nolle prossed. A.W. failed to meet the conditions of his probation such as performing community service, enrolling in school, and making contact with his probation officer. The PDR recommended A.W. be placed in a low-risk residential facility. While awaiting disposition, A.W. again violated his probation by staying out after curfew. When the trial court sentenced A.W., it placed him in a high-risk residential program and stated the reasons for departure as:
(1) A.W. is not in school, is not- receiving any vocational training and does not have a full-time job despite repeated encouragement that he participate in one of these, (2) A.W. is “an abuser of illegal substances, given his age,” (3) A.W. “is on probation for a felony,” (4) A.W. was “before the [cjourt that day for violating ... probation,” and (5) the trial court did not think that the mother had sufficient control over A.W. to motivate him to go to school, obtain full-time employment or avoid illegal substances.
Id. at 859. These reasons for departure are very similar to the ones in the instant case, except for the finding that W.W. misrepresented his status of enrollment in college. A review of the record indicates that although W.W.’s attorney said he was “enrolled,” the letter from the college stated he was merely attending, preparatory classes. As counsel argued to the trial judge, this may have been a miscommuni-cation or maybe just a misunderstanding as to what is meant by “enrolled.”
In A.W. this court held:
A trial court’s decision to depart from the DJJ’s recommendation is reviewed under an abuse of discretion standard and must be supported by competent and substantial evidence. Thus, while this Court has stated that a trial court is not required to articulate “the ‘characteristics of the restrictiveness level imposed vis-a-vis the needs of the juvenile,’ ” there still must be evidence in the record to support the trial court’s departure.
Id. (citations omitted). In AW., this court concluded that the findings did not support commitment to a high-risk facility. It cited to section 985.03(45)(c), Florida Statutes (2002), which defines high-risk residential programs as:
[pjrograms or program models ... [which] are residential and shall not allow youth to have access to the community. Facilities are hardware-secure with perimeter fencing and locking doors. Facilities shall provide 24-hour awake supervision, custody, care, and treatment of residents. Youth assessed and classified for this level of placement require close supervision in a structured residential setting. Placement in programs at this level is prompted by a concern for public safety that outweighs placement in programs at lower commitment levels. The staff at a facility at this commitment level may seclude a child who is a physical threat to himself or herself or others. Mechanical re- *364 ■ straint may also be used when necessary. The facility may provide for single cell occupancy.
Id. at 860. Finally, this court stated:
In other cases where the trial court committed the child to a high-risk residential facility, evidence existed in the record which supported the need to place the child in the high-risk facility. In K.S. [v. State, 835 So.2d 350 (Fla. 4th DCA 2003) ], this Court found that a child should be placed in a high-risk residential program, contrary to the DJJ’s recommendation, where the child was a flight risk and her conduct exposed her to danger. 835 So.2d at 350, 352. The court stated that a high-risk facility was necessary to “ ‘secure’ the juvenile for her own protection as well as that of the public.” Id. at 352. In C.T. v. State, 819 So.2d 869, 872 (Fla. 4th DCA 2002), this Court approved the placement.of a child in a high-risk residential program, despite the DJJ’s recommendation that she be placed in a moderate-risk program, because the child had violent tendencies and was a flight risk. The court in A.J. v. State, 826 So.2d 528, 529-31 (Fla. 5th DCA 2002), approved the placement of a child in a high-risk residential facility, rather _ than the moderate-risk program recommended by the D JJ, where the child had ten previous offenses, many of which were violent, and the child had previously been committed to a moderate-risk facility and had gone on to commit other offenses after being released from the program.
862 So.2d at 860.
Appellant in the instant case was not found to be dangerous or a flight risk. He was not even on probation as the juvenile was in AW. Based upon this court’s decision and reasoning in A.W., we hold that the trial court abused its discretion in departing from the recommendation to the extent of placing him in a high-risk facility.
REVERSED AND REMANDED.
STONE and TAYLOR, JJ., concur.