BROWNING, C.J.
D.O. (Appellant), a juvenile, appeals the trial court’s final disposition order imposing a stricter sanction than what the Department of Juvenile Justice (DJJ) recommended. Because a preponderance of the record evidence — which is set forth in detail in the disposition order — supports the court’s decision to deviate upward from the DJJ’s recommended level of restrictiveness, we find no abuse of discretion. Accordingly, we affirm the disposition. See P.W.G. v. State, 682 So.2d 1203 (Fla. 1st DCA 1996), aff'd, 702 So.2d 488 (Fla.1997); J.L.K. v. State, 894 So.2d 984 (Fla. 1st DCA 2004); C.T. v. State, 819 So.2d 869 (Fla. 4th DCA 2002); Q.L.J. v. State, 714 So.2d 628 (Fla. 1st DCA 1998).
Appellant was born on August 20, 1992. The State’s amended petition for delinquency charged him with sexual battery (by oral and/or anal and/or vaginal penetration) upon M.H., who was less than 12 years old, when Appellant was less than 18 years old, in violation of section 794.011(2)(b), Florida Statutes; and with unlawfully engaging in sexual activity, i.e., lewd or lascivious battery (by vaginal penetration), with M.H., who was 12 years of age or older but less than 16 years old, in violation of section 800.04(4)(a), Florida Statutes. The sexual battery was alleged to have occurred between October 1, 2005, and October 1, 2006. The lewd or lascivious battery was alleged to have occurred on or about October 21, 2006. Appellant pled no contest to both offenses.
The trial court heard testimony indicating that the 12-year-old victim (Appellant’s cousin) was in her bed when Appellant entered the bedroom and started rubbing the victim’s bottom, which she described as her private area. Appellant asked the victim to suck his “thing,” which she identified as his penis. Appellant placed his penis into the victim’s mouth. The victim testified that Appellant also placed his “thing” into her “bottom,” whereupon the victim tried to get away and called her grandmother. The victim testified that Appellant tried to choke her as she attempted to elude his grasp. By the time the grandmother entered the room, the victim had been dragged to the floor, and Appellant was zipping his pants. The victim described another incident outdoors when Appellant had attempted to put his “private area” into her “bottom.” The victim expressed fear of Appellant. The grandmother did not learn of the first incident until after the second incident occurred.
The DJJ’s predisposition report recommended probation. The prosecutor sought a stricter, Level 8 program with sex-offender therapy. After a disposition hearing, the trial court cited Q.L.J. to support the imposition of a moderate-risk residential placement pursuant to section 985.03(44)(c), Florida Statutes (2006). Appellant contends that all the grounds on which the trial court relied are either *1055 wrong as a matter of law or are unsupported by a preponderance of the evidence.
A trial court’s decision to disregard the DJJ’s recommendation of the restrictiveness level must be supported by stated valid reasons and a preponderance of the evidence. See § 985.433(7)(b), Fla. Stat. (2006); T.A. v. State, 862 So.2d 13, 14 (Fla. 2d DCA 2003). The appellate standard of review is whether the factual findings are supported by competent substantial evidence. See S.L.K. v. State, 776 So.2d 1062, 1064 (Fla. 4th DCA 2001). We review the trial court’s decision on the proper level of placement for an abuse of discretion. See J.L.O. v. State, 721 So.2d 440, 442 (Fla. 5th DCA 1998).
The trial court’s reason(s) for disregarding the departmental recommendation must specifically reference the characteristics of the restrictiveness level relative to the child’s needs, and the court must explain why it came to a different conclusion from the DJJ’s recommendation. See D.J. v. State, 954 So.2d 1282 (Fla. 1st DCA 2007); S.L.K., 776 So.2d at 1062. The disposition order lists five grounds for deviating upward from the DJJ’s recommendation of probation: 1) the DJJ was not wholly objective in its lenient recommendation; 2) the victim was especially vulnerable; 3) defense expert Dr. Spoerl was not really familiar with the DJJ’s programs and did not score the alleged violence; 4) the State’s expert, Dr. Hume-Guilford, was very familiar with the DJJ’s programs and recommended moderate-risk residential placement; and 5) factual similarities between Q.L.J. and Appellant’s case justify the stricter sanction.
As to the first ground, the trial court apparently reasoned that the DJJ was not objective because Appellant’s mother used to work at a center for psychiatric adults and at a juvenile assessment center affiliated with the DJJ. However, no evidence in this record suggests a causal connection between the mother’s former employment and the relatively lenient departmental recommendation.
The court’s second ground is based on the vulnerability of the young victim, who is mentally and emotionally handicapped. The victim’s range for verbal and nonverbal reasoning is low/average, her spatial abilities are in the mild mentally handicapped range, and her overall intellectual abilities fall within the borderline range. Although Appellant asserts that the victim’s special vulnerability is not relevant to Appellant’s placement, the record suggests that a key purpose of sexual and behavioral counseling is to identify and discourage inappropriate conduct, including violent sexual acts against especially vulnerable subjects. The record suggests that Appellant and the victim were frequently in close proximity to each other due to their kinship. The victim was unable to protect herself from Appellant’s predatory sexual advances. Other evidence in the record indicated that Appellant has a habit of grabbing the buttocks and breasts of his female schoolmates. At home, Appellant was allowed to watch pornography. His mother provided him with condoms without discussing sexual activity and personal responsibility. Appellant is at least a moderate risk to public safety. Thus, the trial court properly considered the special vulnerability of the young female victim.
The third ground is based on a fair reading of the testimony of defense expert Dr. Spoerl, who testified she did not know very much about the local program for outpatient sex offender therapy and would defer to the opinions of the State’s expert regarding whether Appellant qualified for a particular treatment program.
The record supports the fourth ground. Dr. Hume-Guilford, who performed com *1056 prehensive evaluations and sexual offender treatment for the DJJ, demonstrated her familiarity with in-patient and out-patient sexual offender counseling for juveniles in Florida. After reviewing Appellant’s case, Dr. Hume-Guilford opined that his is not an appropriate case for solely out-patient treatment and probational residence in the community, due to the serious and violent nature of the primary offense. Specifically, the duration of the weekly out-patient treatment sessions in Leon County is not intensive enough for Appellant’s type of ease. This expert expressed concern that some “minimization” of the seriousness of Appellant’s offenses seemed to be occurring, given Appellant’s reputation as a good kid who would not offend. Mere probation and out-patient treatment would make it harder to correct this minimization, especially for a child like Appellant who had never received sexual offender treatment. Dr. Hume-Guilford recommended in-patient treatment and a moderate-risk residential placement, which very likely would be more efficient and therapeutic and would allow Appellant to receive the specific type of needed treatment — sexual education and counseling and anger management — sooner, and more often.
The trial court correctly noted the factual similarities to Q.L.J., 714 So.2d at 628. Q.L.J., a 14-year-old with no prior referrals to the DJJ, committed a sexual battery upon a 5-year-old. The DJJ recommended commitment in a moderate-risk facility. Noting that Q.L.J.’s act would be a life felony if the child were an adult, and that the recommended placement was inappropriate because the child was a danger to society, the trial court placed Q.L.J. in a more secure, high-risk residential program. See Id. at 629. This court affirmed the disposition order and stricter sanction in light of the serious nature of the crime and the circumstances surrounding the commission of the offense. See Id. at 629-30.
Four of the five reasons stated by the trial court for imposing a higher level of restrictiveness are clearly supported by the evidence. Although the record does not support the court’s conclusion that the DJJ was “not being wholly objective” in making its recommended lenient disposition, it is clear from this record that the trial court would have deviated upward for the four valid reasons, irrespective of the unsupported reason. The inclusion of an unsupported ground is harmless error. See J.L.W. v. State, 814 So.2d 1223 (Fla. 3d DCA 2002) (finding harmless error in trial court’s limiting juvenile’s cross-examination of co-respondent who testified for state in delinquency adjudication proceeding).
Accordingly, we AFFIRM the disposition order.
BARFIELD and ROBERTS, JJ., concur.